OVERTON, J.
 

 The plaintiff, in each of the first three suits named in the title, is a practicing physician in the parish of East Baton Rouge, and is a member of the East Baton Rouge Parish Medical Society, which is a voluntary, unincorporated association, chartered by the Louisiana State Medical Society. The plaintiffs, in the fourth suit, are the president, the secretary-treasurer, and members of the board of directors of the Stanacola Employees’ Medical and Hospital Association, which is a voluntary, unincorporated' association of employees of the Standard Oil Company of Louisiana, numbering approximately twenty-eight hundred members, suing on their own behalf, and on behalf of the association, to protect its rights.
 

 The purpose of the Stanacola Employees’ Medical and Hospital Association is the procuring of high grade medical services at a small cost to the members thereof and their families, and also hospital facilities. The members pay at stated periods a prescribed sum to the association, out of which the facilities mentioned are procured. In order to accomplish the purpose of its existence, the association employed Dr. W. Kernan Irwin, Dr. Edward B. Young, and Dr. Harry G. Morris, as physicians, or surgeons, or both, to administer to the needs of its members, at salaries ranging from six to eight thousand dollars a year, and also employed other physicians, who are not involved in this litigation;
 

 
 *1093
 
 The East Eaton Rouge Parish Medical Society is hound by the code of ethics of the American Medical Association, as is also the Louisiana State Medical Society. In this code is found a provision, reading as follows: “It is unprofessional for a physician to dispose of his services under conditions that make it impossible to render adequate service to his patient or which interfere with reasonable competition among the physicians of a community. To do this is detrimental to -the public and to the individual physician, and lowers the dignity of the profession.”
 

 The local society has a by-law, reading as follows: “Kindly efforts in the interest of peace, conciliation or reformation, so far as possible or expedient, shall precede the- filing of formal charges affecting the character or standing of a member, and the accused shall have the opportunity to be heard in his own defense in all trials and proceedings of this nature. Any member expelled, suspended or resigning from this society is thereby expelled, suspended or resigned from the .state society. Appeal may be taken as provided in chapter VI of the by-laws of the state society.” In the by-laws of the state society it is provided that “Any physician who may feel aggrieved by the actions of the society of his parish in refusing him membership, or in suspending or expelling him, shall have the right of appeal to the council and to the house of delegates.”
 

 At a meeting of the local society, held on September 12, 1928, the following resolution was adopted, to wit: “Inasmuch as it is contrary to the code of medical ethics as laid down by the A. M. A. (American Medical Association) to engage in such contract practice as ‘interferes with reasonable competition among physicians of a community’ it is the sense of this society that all such practice be immediately stopped. Failure to comply with this section of the code of ethics of the A. M. A. will be prima facie evidence that membership is no longer desired in this society.”
 

 The local society, at a meeting held on March 18, 1929, declared, by a vote of seventeen to eight, that the contracts entered into by the plaintiffs, Drs. Irwin, Young, and Morris, with the Stanaeola Employees’ Medical and Hospital Association were unethical, a quorum, under the by-laws of the society, being present.
 

 Thereafter, an opportunity to surrender their contracts was given these physicians, but in the exercise of their judgment, and not deeming the contracts in the least unethical, or in violation of the code of ethics of the American Medical Association, they refused to surrender them. Later, the following report was made to the local society by' a special committee thereof, appointed pursuant to a resolution of the society, of date, March 13, 1929, and reading, so far as pertinent, as follows: “In view of the fact that the contracts entered into by Doctors W. Kernan Irwin, H. G. Morris and E. B. Young are such as ‘interfere with reasonable competition among the physicians of this community’ and are, therefore, in violation of the resolution heretofore adopted by this society of date, the 12th day of September, 1928, the committee now prefers charges against the said Doctors W. Kernan Irwin, II. G. Morris and E. B. Young, which charges are as follows, to wit:
 

 “That they and each of them have entered into contracts with the Stanaeola Employees Medical and Hospital Association which contracts are of such a nature as to prevent reasonable competition, all in violation of the aforesaid resolution of this society.
 

 
 *1095
 
 “We
 
 recommend that the
 
 aforesaid doctors be served with a copy of this report and of the. above charges, and that the trial thereon be had at the next regular meeting of the society.”
 

 At the instance of the local society, on June 15, 1929, a copy of this report, together with a notice that his trial would be held at the police jury room oh Wednesday, July 10, 1929, at 8 p. m., was forwarded by the president of the society, and the secretary thereof, to Dr. Irwin, and was received by him. Copies of the report and similar notices, as to trial, were also sent to Drs. Young and Morris, and were received by them.
 

 Following the receipt of these notices, the four suits under consideration were filed. The contracts entered into by Drs. Irwin, Young, and Morris, are set forth in each petition therein. It is also alleged that these contracts are not unethical or in violation of the medical code of ethics, and that the cause for which it is proposed to expel these physicians is unreasonable. It is also alleged that the expulsion of these physicians will deprive them of the right to use the hospitals in the state, and especially the two hospitals in the parish of East
 
 Baton
 
 Rouge, in performing surgical operations, and in their practice, since the management of these hospitals will not permit physicians and surgeons to use these institutions unless they are members of the local medical society, and that the use of hospitals is necessary in their practice and in discharging the contracts involved herein, which they allege to 'be valuable property rights. It is further alleged that thirty physicians, all of whom are members of the local society, have conspired to expel them from the society in default of their surrendering their contracts.
 

 The allegation, ás to conspiracy, rests upon the declaration made in the resolution
 
 mentioned above, that the contracts
 
 of these physicians with the Stanacola Employees’ Medical and Hospital Association are unethical, and upon alleged threats by some of the physicians, made defendants in these suits, to expel the three plaintiffs, who are physicians, from the society, unless they surrender their contracts. .
 

 The interest that the officers and directors of the Stanacola Employees’ Medical and Hospital’ Association allege, as entitling them to sue, is that the expulsion of the three physicians, for the cause alleged, will ¡materially affect, if not destroy, the contracts of the association with them.
 

 The thirty physicians, against
 
 whom the
 
 charge of conspiracy is preferred, are made the sole defendants in the case. The total membership of the society, of which they are members, is fifty-two.
 

 The prayer of each petition in the three suits, under consideration, brought by the physicians against whom the society was about to proceed, is that the thirty physicians, named as defendants, be ordered to show cause why a preliminary injunction should not issue, restraining them from expelling the plaintiff from the East Baton Rouge Parish Medical Society, upon the furnishing of bond by the plaintiff therein, and that judgment be rendered against these physicians, after due proceedings had, perpetually enjoining them from expelling the plaintiff, or voting to expel him, or taking any action against him as a member of the East Baton Rouge Parish Medical Society. The prayer also asks for the issuance of a temporary restraining order, which was issued.
 

 The prayer of the petition in the suit, brought by the officers and directors of the Stanacola Employees’ Medical and Hospital Association, is that the thirty physicians,
 
 *1097
 
 named as defendants therein, he enjoined ■from expelling the three physicians, who are plaintiffs in the remaining suits, from the Bast Baton Rouge Parish Medical Society, or from taking any other coercive, threatening, or punitory action against them, because of their having contracts with the Stanacola Employees’ Medical and Hospital Association. In other respects the prayer is substantially the same as it is in each of the remaining suits.
 

 When ruled to show cause why the injunctions should not issue defendants filed five exceptions in each of the four suits, among which are exceptions to the jurisdiction of the court, ratione materias; exceptions of no right or cause of action; and exceptions of prematurity, and when these were referred to the merits by the trial judge, they filed an-, swers, denying the alleged conspiracy, and putting at issue all other material allegations of the petitions.
 

 On the trial of the rule to show cause why the injunctions should not issue, evidence was adduced in support and in denial of the alleged conspiracy. Evidence was also offered, relative to the ethicalness of the contracts, and touching the effect that the expulsion of the three complaining physicians would have upon the contracts. After the hearing had, the trial judge overruled the exceptions filed and ordered the preliminary injunctions to issue. The case is now before us on the devol-utive appeal taken from that order.
 

 The East Baton Rouge Parish Medical Society unquestionably has the power to suspend or expel its members for legal cause. It has the power to determine, after due hearing had, whether the cause alleged for suspension or expulsion has been established. It has also the power to determine, after due hearing had, whether the cause alleged is a legal cause, and one not in contravention of the laws of the land. If, after the final hearing, the one proceeded against feels' aggrieved by the result, he has the right, as provided by the state society, and recognized in the by-laws of the local society, to appeal to the council and to the house of delegates of the former. There the fairness of the trial may be looked into, and all matters pertaining to it, and the order of suspension annulled or affirmed, as justice may demand. The appeal allowed by the by-laws of the state society and of the local society, is an effective appeal — that is, one which would prevent the local society from carrying out its order of suspension or expulsion until the appeal is passed upon. Until the person aggrieved has exhausted his recourse within the society, as a general rule, resort may not be had to the courts.
 

 Thus, it is said in Ruling Oase Law, vol. 25, p. -57, § 14, of the title “Societies and Clubs;” “The decisions of any kind of a voluntary society or association in admitting members, and in disciplining, suspending, or expelling them, are of a quasi judicial character. In such eases the courts never interfere, except to ascertain whether or not the proceeding was pursuant to the rules and laws of the society, whether or not the proceeding was in good faith, and whether or not there was anything in the proceeding in violation of the laws of the land. If it is found that the proceeding was had fairly, in good faith, and pursuant to the laws of the organization, and that- there was nothing in it in violation of the law of the land, the decision is conclusive, like that of a judicial proceeding, and renders the case res judicata, and will preclude its re-examination on its merits by a judicial court. But if for any reason the decision of such tribunal is void, the disciplined member will be reinstated by the courts, as where an expulsion was on a
 
 *1099
 
 charge which did not' justify éxpulsion even ■ if established; where the proceedings of the tribunal were not in accordance with the charter and by-laws of the society, or where the suspension or expulsion was based on an illegal or improper by-law.”
 

 And in 25 Ruling Case Law, pp. 59 and 60, § 16 of the title “Societies and Clubs,” it is said: “It is a well settled rule that the courts will not interfere at the instance of an aggrieved member of an association until he has exhausted all the remedies afforded him by the constitution or by-laws of the association, or shows a good excuse for not having done so. And this rule has been applied even where property rights are involved. Accordingly, where a right of appeal is given to a tribunal provided by the society, the members must pursue that remedy, unless the provisions for appeals within the organization are unreasonable or inadequate. * *
 
 *
 
 ” However, as appears from the same section, there is some conflict of authority as to the necessity of exhausting recourse within the society before resorting to the courts where the suspension or expulsion is absolutely void.
 

 In Corpus Juris, vol. 5, p. 1364, it is said: “The courts will not interfere with the internal affairs of an unincorporated association so as to settle disputes between the members, or questions of policy, discipline, or internal government, so long as the government of the society is fairly and honestly administered in conformity with its laws and the law of the land, and no property or civil rights are invaded. Conversely, the proceedings of the association are subject to judicial review where there is fraud, oppression, or bad faith, or property or civil rights are involved, or' the proceedings in question are violative of the laws of the society or the law of the land, or are illegal.' Evén in these' cases, however, the courts will not take jurisdiction unless the complaining member has exhausted such remedies as may be provided by the laws of. the association itself.”
 

 The rule that a complaining member of a voluntary association must exhaust his remedies within the association before he may apply to the courts for relief has been recognized by this court. In Rabb v. Trevelyan, 122 La. 174, 184, 47 So. 455, 459, it was said: “The weight of authority, however, sustains the proposition that an expelled member of a fraternal order, a mutual benefit association, an incorporated labor union, an unincorporated club, etc., must exhaust his remedy (provided it appears to be reasonably sufficient) within such organization, including the exercise of the right of appeal, before he can be heard in the courts.” The case of Braden v. Lewis, 148 La. 920, 88 So. 117, is to the same effect.
 

 It is true that the injunction here prayed for, and issued, is not directed against the association itself, or all the members thereof. Where, however, as is the case here, the injunction is directed against a considerable number of the members, and, in fact, against a majority of them, to restrain them from voting, upon charges preferred, for the expulsion of a member, the effect is virtually the same as if the injunction had been prayed for and issued against the association or its entire membership, for the right of the association to function is thereby greatly interfered with, if not entirely destroyed, as to action on charges preferred. The foregoing principles are therefore applicable to the situation here presented.
 

 The exceptions to the jurisdiction, of prematurity, and of no cause of action, filed herein, all rest upon the same basis, which is that the courts have no right or power to' interfere until the complaining member has
 
 *1101
 
 exhausted his remedy within the society. That the three complaining physicians have not done so is apparent, not only from their petitions, but also from the evidence adduced. The trial in the local society was not had after the restraining order was issued. If these physicians do not obtain a fair and impartial trial in the local society, because, of an alleged conspiracy, or for other cause, or if the charge preferred against them is not such as to justify their suspension or expulsion, they have an adequate remedy, by appeal, within the society. If they do not obtain redress by appeal, and consider that they did not have a fair and impartial trial, for any substantial reason, whether because of a conspiracy or other cause, or because the charge preferred against them is based upon an illegal by-law, or because the trial was irregular, then, by proper showing made, they-may apply to the courts for relief, but in the meantime the society cannot be deprived of its right, directly or indirectly, to try them, or that right be so impeded as virtually to defeat it. Therefore, as to them, the exceptions to the jurisdiction, of prematurity, and of no cause of action should be sustained.
 

 As to the suit filed 'by the officers and directors of the Stanacola Employees” Medical and Hospital Association, it is manifest, from their petition, that these officers and directors knew that their association had contracted and was continuing its contracts with physicians who were, or who were apt to become, members of the medical society, at any time. The very purpose of their suit is to maintain these physicians in the society. These officials, on their own behalf, or on behalf of their association, have no right to attempt to prevent or interfere with the trial of these physicians by the medical society. To permit them and others similarly situated to do so would, in effect, destroy the.: right of the society, or greatly limit it, to try, and suspend, or expel a member having alleged unethical contracts. The association must be conclusively presumed to have dealt with these physicians with reference to their right to join a medical society, and with reference to the right of the society to prefer charges against them, and to dispose of the charges, and therefore cannot complain when the society undertakes to do so. See Green v. Board of Trade of City of Chicago, 174 Ill. 585, 51 N. E. 599, 49 L. R. A. 365. It will be time enough for the association to complain, should cause present, justifying a complaint by it or its members when the charges' preferred are finally disposed of. As to the suit by these officials, the exception of no cause of action should be sustained.
 

 We have considered the authorities cited by plaintiffs, but do not find them applicable.. They consist largely of cases where third persons by their unwarranted or illegal 'conduct have designedly injured the business of another, such as the cases of Kernan v. Humble, 51 La. Ann. 389, 25 So. 431; Graham v. St. Charles Street R. Co., 47 La. Ann. 214, 16 So. 806, 27 L. R. A. 416, 49 Am. St. Rep. 366; and Hitchman Coal & C. Co. v. Mitchell, 245 U. S. 229, 38 S. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461, and cases bearing to a greater or less degree on, that point. Here the society is seeking to exercise its right of trying three of its members, for the alleged violation of a rule of ethics, and an effort is made to prevent it, indirectly, from doing so.
 

 For these reasons the judgment appealed from is set aside, the exceptions to the juris-, diction of no cause of action and of prematurity are sustained, and these suits are dismissed, at plaintiffs’ cost in both courts.
 

 O’NIELL, C. J., dissents.