220 So.2d 802 (1969)
Gino MARINO, Plaintiff-Appellee,
v.
T. H. WATERS and the Louisiana High School Athletic Association, Defendants-Appellants.
No. 7705.
Court of Appeal of Louisiana, First Circuit.
March 10, 1969.
Rehearing Denied April 14, 1969.
*803 Charles M. Hughes, of Talley, Anthony, Hughes & Knight, Bogalusa, for appellants.
J. J. McKernan, of Brown, McKernan & Ingram, Baton Rouge, for appellee.
Before LANDRY, SARTAIN, and MARCUS, JJ.
MARCUS, Judge.
This is an appeal by the defendants T. H. Waters and the Louisiana High School Athletic Association from an injunction restraining them from the enforcement of their ruling that Gino Marino is ineligible during the school year 1968-69 to participate in interscholastic athletics at Robert E. Lee High School in Baton Rouge. During the school year 1967-68, plaintiff attended Catholic High School in Baton Rouge where he was an outstanding fullback and linebacker on the Catholic High football team. At that time plaintiff resided with his parents on Belmont Avenue in Baton Rouge. Under the regulations of the East Baton Rouge Parish School Board, a student residing on Belmont Avenue is required to attend Baton Rouge High School, except that, if he wishes to attend a parochial school, he must attend Catholic High School.
On July 1, 1968 plaintiff married, and he and his wife moved to an apartment owned by the family of the bride and provided rent-free to the couple. The apartment is located on Chatworth Street, which is within the Robert E. Lee High School district. It was soon brought to the attention of Gino Marino that he would be unable to continue attending Catholic High School, because of a ruling in force at that school prohibiting attendance by married students. Furthermore, under the general policy of the East Baton Rouge Parish School Board that a student must attend school in the district in which he resides, the only public school which plaintiff could attend was Robert E. Lee High School.
At this point plaintiff, a good football prospect whose talents had attracted tentative contacts from a number of universities relative to football scholarships, became concerned about his eligibility to participate in athletics during his senior year. In an attempt to comply with the eligibility requirements set forth in the rules of the Louisiana High School Athletic Association, the parents of the plaintiff moved from their home on Belmont Avenue into the apartment occupied by the plaintiff and his wife.
The football coach at Lee High School then requested a ruling from the Association on the eligibility of Gino Marino under the "Transfer Rule" which is Section 11 of Article 1 of the by-laws of the Louisiana High School Athletic Association. That rule provides in relevant part as follows:
"No pupil who enrolls in one high school and later transfers to, or enrolls in, another shall be eligible to represent the latter school in any athletic contest with the following exceptions.
A student shall be considered as enrolled in a high school when he has enrolled and attended any class in that school.
* * * * * *
EXCEPTION IIIA pupil whose parents make a bona fide move from one school district to another may transfer all his rights and privileges to his school district at the time the parents move.
* * * * * *
Definition of `bona fide move': A student whose parents move to a new residence, but do not intend to make it their permanent home, have not given up their former home, or have not sold their personal property or moved it to the new residence, will not be eligible unless a ruling has been given that a bona fide change of residence has been made. Two legal residences will not be permitted with regard to eligibility. Any move that is not bona fide and is made for the purpose of creating eligibility shall be considered illegal and the student *804 shall be ineligible in any school for a period of one year. A ruling for a bona fide change of residence will be determined as follows: At the request of the new school that the student will attend following his parent's change of residence, the Commissioner will appoint a committee of two or three principals from the district of the family's new residence to serve with him to determine if the family's move was bona fide or if it was for the sole purpose of creating the eligibility of the student."
Pursuant to the above rule, a committee of three principals was appointed, and an investigation made. The ruling of the committee was that, because the parents of the plaintiff admittedly moved only for the purpose of assisting their son to attain eligibility to play football, theirs was not a bona fide move within the meaning of the transfer rule, and hence Gino Marino was ineligible to participate in football at Robert E. Lee High School. This ruling was appealed to the Association's Executive Committee, which upheld the finding of ineligibility. At this point plaintiff brought an action to enjoin the Association from enforcing its ruling, and after a full hearing in the District Court the injunction was granted and the plaintiff did in fact participate in football for the remainder of the season. The defendants appealed the ruling, and are before this Court asking that the injunction be dissolved.
This Court, as was the trial court, is sympathetic to the dilemma in which plaintiff found himself. Under the rules of the Association, where the districts of two schools intersect, as will frequently be the case where there are a parochial school and a public school in the same area, a student who transfers from one school to another school in the same district will be ineligible for athletics at the latter school for a period of one year. Under this rule, Gino Marino would have been ineligible to participate in athletics at Baton Rouge High School during his senior year, even if he had chosen to reside in that same district where he had previously lived with his parents. The rules of Catholic High School prohibited him from continuing to attend there, and the transfer rule of the Association prohibited his participating in athletics in any other member school unless his parents made a "bona fide move" to the district where the new school was located. Thus, as a result of his marriage, Gino Marino, under the rules of the Association, found himself unable to participate in football at any school belonging to the Association.
In his suit for injunction the plaintiff argued that the rules of the Association were arbitrarily depriving him of a "property right", or "quasi-property right" as it was termed by the trial court, to participation in athletics at Robert E. Lee High School. He argued that, since his participation in football would attract a college scholarship worth a substantial sum of money, his eligibility was a matter of pecuniary interest of the sort which the Fourteenth Amendment protects against taking without due process of law. He further argued that, since a minor emancipated by marriage is legally free in Louisiana to establish his own domicile independent from that of his parents, to base the question of eligibility on the domicile of the parents was to choose an arbitrary criterion in contravention of the requirements of due process of law.
The Association in rebuttal maintains that its rule is not arbitrary and insists that the courts are without power to enjoin its enforcement. In the appellants' brief, the Association is described as follows:
"LHSAA is a voluntary association of high schools of this state. It has no individual membership; i.e., neither the principals nor other administrative officials, nor the coaches, nor the students are members. Membership in the association is on an annual basis and over 400 high schools in the state of Louisiana are members of the association.

*805 The object of LHSAA is to promote, regulate, and direct the interscholastic athletic activities of its member schools. One of its avowed purposes appearing in Article 2 of its constitution is: `2. To protect members of the association by preparing and enforcing eligibility rules that will equalize and stimulate wholesome competition.'"
Appellants' brief explains the interest of the Association in the regulation of eligibility:
"One of the basic functions of LHSAA is to establish and enforce rules for the eligibility of participants in interscholastic athletics. Interscholastic athletics in Louisiana, particularly football, is highly competitive and arouses intense feelings not only among the students, but frequently throughout the community. In order to minimize friction and put all schools on an equal footing, definite standards of eligibility must be fixed and those standards must be strictly and impartially adhered to.
Among the key eligibility rules are those governing students transferring from one school to another. The possibilities of abuse in such transfers are real and obvious, although in many instances proof of abuse is difficult to obtain. Accordingly, the governing athletic associations all over the United States, both high school and collegiate, fix rules strictly limiting the eligibility of transfer students. The basic rule of LHSAA in this connection is contained in Article I, Section II of the By-Laws. Subject to certain limited exceptions, the rule provides that any student who enrolls in one high school and later transfers to, or enrolls in another, shall not be eligible to participate in athletics at the latter for a period of one year."
It is an essential aspect of this case that there is no intimation that Gino Marino has been treated differently from any other student whose eligibility has been questioned under the Association's transfer rule. In his testimony before the lower court, T. H. Waters, Commissioner of the Association and a co-defendant herein, introduced thirteen letters which were written by his office relative to the application of the transfer rule to factually similar situations. In every instance the rule was applied fairly, consistently, and strictly. The question here at issue is not whether the rules have been applied unevenly to the detriment of Gino Marino, but whether the rules as written and applied are Constitutionally permissible.
A basic and widely accepted general rule is "that courts will not interfere with the internal affairs of voluntary associations, except in such cases as fraud, lack of jurisdiction, or the invasion of property or pecuniary rights or interests." 6 Am. Jur.2d 453, 454, Associations and Clubs, Section 27.
The Louisiana High School Athletic Association is a voluntary association, formed by the high schools of the State of Louisiana, to promulgate and enforce uniform rules to govern interscholastic athletic competition. It is plain that there has been no fraud in this matter, nor has the Association, in making a ruling on the eligibility of a student, exceeded its jurisdiction. Furthermore, the Louisiana courts have shown restraint when asked to intervene in the internal affairs of voluntary associations even where property rights were involved. In the case of Heuer v. Crescent City River Port Pilots' Association, La.App., 158 So.2d 221, Writs Refused, 245 La. 580, 159 So.2d 288, a member of the defendant association was suspended from membership by the association's Board of Directors for failing to account for funds. The pecuniary aspect of this suspension was that membership in the defendant association was a prerequisite to the employment as a pilot by vessels traversing certain stretches of the Mississippi *806 River. The Court in refusing to reinstate Heuer, said:
"The general rule in Louisiana is that the courts will not interfere with the internal affairs of a private association so long as its affairs and proceedings are conducted fairly and honestly, and after due notice to anyone involved. Walsh v. New Orleans Cotton Exchange, 188 La. 338, 177 So. 68; Elfer v. Marine Engineers Beneficial Ass'n, No. 12, 179 La. 383, 154 So. 32; Irwin v. Lorio, 169 La. 1090, 126 So. 669; State ex rel. Rhodes Mortician and Undertaking Co. v. New Orleans Funeral Directors' Ass'n, 161 La. 81, 108 So. 132; Braden v. Lewis, 148 La. 920, 88 So. 117."
If the pecuniary deprivation involved in Heuer, which was obvious and immediate, was not sufficient to justify the court's interference with the internal affairs of the Association, it seems to follow a fortiori that this court may not interfere to protect a "property right" as speculative and uncertain as the chance of receiving a college athletic scholarship. Further, it is the opinion of the Court, that the participation in interscholastic athletics is not a property right at all, but is a privilege which the school, or a voluntary association whose rules a school agrees to follow, may withdraw if the student fails to qualify for the privilege. There is of course the limitation that schools may not arbitrarily allow the privilege to some and not to others. But it is clearly not arbitrary for a school, or an association of schools, to establish rules based on rational reasons and to apply these rules uniformly.
The transfer rule of the Louisiana High School Athletic Association has been in effect since around 1920 when the youthful association moved to eliminate the recruiting of high school athletes. The transfer rule, in emphasizing the residence of the parents of the student, is by no means capricious and arbitrary. While it is a rational rule which has apparently produced good results, it is not for this Court to pass upon the merits of this particular rule. This is a matter to be determined by the members of the Association, and it is beyond the power of this Court to impose its ideas of what the rules of the Association should be.
As appellants state in their brief, "Even if we were to concede for the sake of argument that plaintiff-appellee has a constitutional right to engage in interscholastic activities this right is clearly subject to reasonable non-discriminatory limitations. The transfer rule of LHSAA is such a limitation. It is not arbitrary, it has been applied in a completely non-discriminatory manner to all schools and students. It unquestionably bears a reasonable relationship to the end that it was adopted to prevent, including `recruiting,' `dropouts,' etc. It clearly passes all tests of constitutionality."
The case of United States v. Jefferson County Board of Education, 372 F.2d 836 (5th Cir., 1966), should be distinguished. That case held, in part, as follows:
"A student attending school for the first time on a desegregated basis may not be subject to any disqualification or waiting period for participation in activities and programs, including athletics, which might otherwise apply because he is a transfer or newly assigned student except that such transferees shall be subject to long-standing, non-racially based rules of city, county or state athletic associations dealing with the eligibility of transfer students for athletic contests."
In that case the transferring of students to other schools was being done under court order. In the instant case, the plaintiff was not required by the law to change schools. He had to change schools because he chose to marry, and because he attended a school whose rules forbid attendance by married students. Although the plight of Gino Marino was unfortunate, it resulted from the exercise of his own choice.
*807 The courts of other states, when faced with issues similar to the one here involved, involving athletic associations like the LHSAA, have uniformly refused to interfere and interpose their own judgment of what the rules should be. In Morrison v. Roberts, 183 Okl. 359, 82 P.2d 1023 (1938), an Oklahoma student contested a ruling by the Oklahoma High School Athletic Association that he was ineligible because he accepted an award in contravention of the rules of the Association. The Oklahoma court refused to interfere with this ruling, in terms as follows:
"But so long as these member schools, including the Holdenville schools, desire to attach all of these many conditions, limitations, and restrictions on their `eligibles' then surely they should be permitted to do it, so far as the courts are concerned. There is nothing unlawful or evil in any of those rules nor in the provision resting final authority in the Board of Control. Surely the schools themselves should know better than anyone else the rules under which they want to compete with each other in athletic events. And doubtless every one of these rules is founded upon reasons wholly satisfactory to the member schools. And if the officials of the various high schools desire to maintain membership in the association and to vest final rule enforcement authority in the Board of Control, then, so far as affects the affairs of the association, the courts should not interfere." 183 Okl. 359, 361, 82 P.2d 1023, 1024.
In State ex rel. Ohio High School Athletic Association v. Judges of the Court of Common Pleas, 173 Ohio St. 239, 181 N.E. 2d 261 (1962), two boys had transferred to Canton-McKinley High School and played football in violation of the association's rules. The association then suspended the school for one year and declared the two boys ineligible. The Supreme Court of Ohio held "The penalty imposed by the association is indeed harsh and most severe. However, in the absence of mistake, fraud, collusion or arbitrariness, the decision of the association will be accepted by the court." 181 N.E.2d 261, 267.
Tennessee Secondary School Athletic Association v. Cox, 221 Tenn. 164, 425 S.W. 2d 597, was an action by two high school students against the Tennessee Athletic Association to restrain it from preventing their competing in interscholastic activities. The two students had been declared ineligible due to a transfer from a private school to a public school. In upholding the action of the association and the validity of their transfer rule, the Supreme Court of Tennessee stated:
"The cases cited below support the rule courts will not interfere in the internal affairs of a voluntary high school athletic association. In all of the cases the courts have upheld they have no jurisdiction to interfere as in the case of Morrison v. Roberts, supra.; Robinson v. Illinois High School Association, 45 Ill.App.2d 277, 195 N.E.2d 38 (1963); State ex rel. Ohio High School Athletic Association v. Judges of the Court of Common Pleas, supra.; Sult v. Gilbert, 148 Fla. 31, 3 So.2d 729 (1941); and State ex rel. Indiana High School Athletic Association v. Lawrence Circuit Court, 240 Ind. 114, 162 N.E.2d 250 (1959)."
In Starkey v. Board of Education of Davis County School District, 14 Utah 2d 227, 381 P.2d 718 (1963), decided by the Supreme Court of Utah, a high school senior sued to prevent enforcement against him of a board resolution prohibiting married students from participating in extracurricular school activities. The Utah court rejected the argument that the resolution was discriminatory, saying:
"It is not for the courts to be concerned with the wisdom or propriety of the resolution as to its social desirability, nor whether it best serves the objectives of education, nor with the convenience or inconvenience of its application to the plaintiff in his particular circumstances.

*808 So long as a resolution is deemed by the Board of Education to serve the purpose of best promoting the objectives of the school and the standards for eligibility are based upon uniformly applied classifications which bear some reasonable relationship to the objectives; it cannot be said to be capricious, arbitrary or unjustly discriminatory."
Under the foregoing reasons and authorities, this Court is of the opinion that it has no power to disturb this enforcement by the Louisiana High School Athletic Association of its rules, and therefore the decision of the trial court is reversed and the injunction there issued is hereby dissolved, and costs are assessed against plaintiff-appellee.
Reversed.