242 So.2d 19 (1970)
Percy SANDERS, Jr., Plaintiff-Appellee,
v.
LOUISIANA HIGH SCHOOL ATHLETIC ASSOCIATION et al., Defendants-Appellants.
No. 3359.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1970.
Rehearing Denied December 16, 1970.
*20 Talley, Anthony, Hughes & Knight by Charles M. Hughes, Bogalusa, for defendants-appellants.
Ralph Brewer, Baton Rouge, and Fruge & Foret by J. Burton, Foret, Ville Platte, for plaintiff-appellee.
En banc.
PER CURIAM.
This is an action instituted by Percy Sanders, Jr., individually and in behalf of his minor son, Rodney Sanders, against Louisiana High School Athletic Association, Thad H. Waters (Commissioner of Louisiana High School Athletic Association), Ville Platte High School, Academy of Immaculate Conception of Opelousas and Bunkie High School. Plaintiff's principal demands are for judgment: (1) Ordering defendants to declare Rodney Sanders eligible to participate in interscholastic athletics for Ville Platte High School for the school year 1970-71; (2) ordering defendants to declare Ville Platte High School the 1970-71 Class AA District Champions and eligible to participate in the playoffs; and (3) enjoining defendants from conducting the state Class AA *21 high school football playoff with the Academy of Immaculate Conception, as district champion, and Bunkie High School as runner-up.
Incidental to these demands, a temporary restraining order was issued by the trial court restraining and prohibiting defendants "from conducting a state Class AA high school football playoff involving the Academy of Immaculate Conception of Opelousas, as district champion, and Bunkie High School as runner-up." A rule was issued directing defendants to show cause why a preliminary injunction should not be granted.
The suit was filed in the Thirteenth Judicial District Court, in Evangeline Parish. Three of the defendants, the Athletic Association, Waters, and Academy of Immaculate Conception, filed exceptions of improper venue, alleging that none of said defendants are domiciled in Evangeline Parish, that Ville Platte High School is not a joint or solidary obligor with the exceptors, and that Ville Platte High School has no standing, as such, to be sued. Simultaneously with the filing of these exceptions, Louisiana High School Athletic Association and T. H. Waters also filed an answer to plaintiff's petition.
Following a hearing, judgment was rendered by the trial court overruling the exceptions to the venue of the court. A hearing also was held on the rule for a preliminary injunction, and after that hearing judgment was rendered by the trial court in favor of plaintiff and against defendants, granting the preliminary injunction as prayed for, but decreeing "that the preliminary injunction shall not restrain or enjoin the previously scheduled playoffs pending a determination by the appellate courts of the Louisiana High School Athletic Association's * * * devolutive appeal."
The defendants have appealed.

EXCEPTIONS TO VENUE
The evidence shows that the Louisiana High School Athletic Association is a voluntary organization, and that its membership consists of more than 400 "high schools" in the state. In order for a high school to become a member it must sign the application for membership, agree to conform to the rules and regulations of the association, and pay a membership fee. The constitution of the Athletic Association provides that the principal of each high school acts for that school in matters pertaining to the athletic relations of his school, and that he is responsible to the association. The Ville Platte High School is a member of the Louisiana High School Athletic Association.
Defendant Waters is the Commissioner of the Athletic Association. His staff consists of one assistant and four secretaries. His offices are located in Hammond, Louisiana.
We think the Louisiana High School Athletic Association must be considered to be and treated as an unincorporated association, the membership of which consists of more than 400 "high schools" in the state, with its principal business establishment in Hammond, Louisiana.
Ordinarily a suit against a domestic unincorporated association must be brought in the parish where its principal business establishment is located. LSA-C.C.P. art. 42. Article 738 of the Code of Civil Procedure provides, however, that "the members of an unincorporated association may be sued jointly on an obligation of the association and the association may be joined as a defendant in such an action." And Article 73 of that code provides that "an action against joint or solidary obligors may be brought in any parish of proper venue, under Article 42, as to any obligor who is made a defendant."
Since Ville Platte High School is a member of the Athletic Association, and both are being sued jointly on an obligation of *22 the association, it is apparent that under the provisions of LSA-C.C.P. art. 73 the district court sitting in Evangeline Parish is a court of proper venue.
The exceptors argue that Ville Platte High School does not have the capacity to sue or to be sued, but that any action against such a school can be taken only by or through the Evangeline Parish School Board. They cite LSA-R.S. 17:51 and La.Const. Art. 19, Sec. 26, as authority for the position they take. We find no merit to that argument. No objection has been raised by Ville Platte High School, although that party was represented by counsel, and participated in the hearing on the rule to show cause why a preliminary injunction should not issue. Also, as we have already noted, the constitution of the Louisiana High School Athletic Association specifically provides that the membership of that association shall consist of "high schools," represented by the principals of those schools. Insofar as this voluntary association is concerned, therefore, the school is treated as a legal entity in itself. The Ville Platte High School, represented by its principal, is a member of the Athletic Association, and since that school was made a party to this suit the parent association is subject to the venue of the court in Evangeline Parish.
It is true that defendant Waters does not reside in Evangeline Parish. He is sued in his capacity as Commissioner of the Louisiana High School Athletic Association, however, and since that association was properly before the trial court, we think the court also is one of proper venue as to Waters.
For these reasons we affirm the judgment of the trial court overruling the exceptions of venue filed by these defendants.

ON THE MERITS
The principal question presented on the merits is whether the trial court erred in interfering with the internal affairs of the Louisiana High School Athletic Association, by reversing a decision of the Executive Committee of that association relating to the eligibility of plaintiff's son, Rodney Sanders, to participate as a member of the Ville Platte High School football team during the fall of 1970. The decision of the Executive Committee was that Rodney was ineligible because he had not been "enrolled" in the Ville Platte High School one year before he began participating in interscholastic athletics.
The evidence establishes that prior to the summer months of 1969, Rodney Sanders lived with his parents in Ascension Parish, Louisiana, and he attended public schools in that parish until that time. He did not participate in the athletic programs at any of those schools. During the summer of 1969 he spent a considerable amount of time visiting his grandparents, Mr. and Mrs. Lee Israel, who lived in Evangeline Parish. While Rodney was visiting there, his parents decided that he and his younger brother, Roger, would be enrolled in the Ville Platte High School when school opened in the fall of 1969, and that both boys would attend school in that institution during the 1969-70 school year, rather than to return to the Ascension Parish schools.
Rodney's grandmother, Mrs. Israel, was a teacher in Ville Platte High School. An agreement was reached between her and Rodney's parents that the boy was to live with her, that he would be enrolled in the Ville Platte High School in the fall of 1969, and that he would attend school there that school year.
Shortly before the schools were scheduled to open in either of those parishes in the fall of 1969, a considerable amount of racial strife, disorders and violence occurred in many schools throughout the state, following a decision relating to "freedom of choice" which was rendered by the United States Circuit Court of Appeal, Fifth Circuit, about that time. The disorders were of such a serious nature in *23 Evangeline and Ascension Parishes that there was a question in the minds of many, and particularly in the minds of Rodney's parents, as to whether the Ville Platte High School or the East Ascension High School would be able to remain open during the 1969-70 school year.
In view of these disturbing conditions Rodney's parents became uncertain as to which school their two boys should attend. They preferred that Rodney enroll as an eleventh grade student in the Ville Platte High School, but since that school was not scheduled to open until September 2, 1969, they had him enroll in the East Ascension High School on August 27, 1969, that being the date on which students were required to register in that school. When school was scheduled to open in Ville Platte on September 2, 1969, Mrs. Israel registered Rodney and his brother as students in the Ville Platte High School on that date. The records of that school show that Rodney was duly enrolled as a student in the Ville Platte High School as of September 2, 1969.
During the evening of September 2, 1969, a meeting of the citizens was held in the gymnasium of the Ville Platte High School, and as a result of that meeting the school was closed. It remained closed until about the middle of September, and thereafter students began to drift back gradually, but it was not until early November that a substantial number of students returned to the school, and it became apparent then that the school would remain open during the remainder of the year.
Rodney attended school at the East Ascension High School from the day he enrolled, August 27, until November 10, 1969. On the last-mentioned date he moved to Ville Platte, and he began attending classes in the Ville Platte High School, pursuant to the enrollment or registration which Mrs. Israel had made for him earlier. He eventually was dropped by East Ascension High School on December 3, 1969, and all of his school records were sent to Ville Platte. In due course Rodney completed the eleventh grade in the spring of 1970. He re-enrolled as a student in Ville Platte High School in the fall of 1970, and he has been attending that school since that time.
Rodney did not participate in athletics at the Ville Platte High School during the 1969-70 school year. He went out for football in the fall of 1970, however, and he participated in practically every football game played by the high school football team during the months of September and October of that year. The high school had a successful 1970 football season, winning the district championship and becoming eligible to participate in the state high school football playoffs in the Class AA category.
During the early part of November, 1970, a complaint was made to T. H. Waters, Commissioner of the Louisiana High School Athletic Association, that Rodney was ineligible under the "transfer rule" to play on the Ville Platte High School team before November 12, 1970. After investigating that complaint, Waters issued a ruling on November 9, 1970, that Rodney was ineligible to play on the Ville Platte team prior to November 12, 1970. And, Waters imposed a penalty on the Ville Platte School, consisting of a fine, placing the school on probation for one year, and declaring that "all games in which Rodney Sanders participated are forfeited and Ville Platte High School is ineligible for championship honors in football for 1970."
The principal of the Ville Platte High School appealed promptly from that ruling to the Executive Committee of the Louisiana High School Athletic Association. The appeal was granted, and the Executive Committee of the association met in Baton Rouge on November 15, 1970, to consider the appeal. After a hearing on that appeal, the Executive Committee ruled "that Ville Platte High School used Rodney Sanders in football games while he was ineligible November 20, 1970. *24 under the transfer rule, and sustained the penalty given the school by the Commissioner." This suit was then instituted on
The records of the East Ascension High School show that Rodney entered that school on August 27, 1969, in the eleventh grade and that he was dropped on December 3, 1969. During the first six weeks of that time he was present 24 days and absent 6 days. During the second six-week period he was shown to be present 25 days and absent 5 days, the last-mentioned five-day absence having occurred after November 10, while Rodney was attending the Ville Platte High School. Rodney was not dropped from the rolls of the Ascension school until December 3, several weeks after he had been attending school in Ville Platte.
The "Permanent Cumulative Record" of the Ville Platte High School shows that Rodney was received from East Ascension High on November 12, 1969, but it also shows: "Sanders, Rodney G., entered 9-2-69." The "Register Sheet" of the Ville Platte High School shows that Rodney entered that school on November 12, 1969, that he was promoted to grade 12 and that he was present 128 days, and absent 5 days, during the school year.
All parties agree that the principal reason for including the so-called "transfer rule" in the By-laws of the Athletic Association was to prevent or to deter the recruiting of athletes from one school to another. The parties also stipulated that no recruiting of any kind was involved in the transfer of Rodney from East Ascension to Ville Platte.
Plaintiff takes the position that Rodney entered Ville Platte High School on November 12, 1969, because it became apparent about that time that the school would remain open the rest of the year. The evidence also shows, however, that a serious disturbance occurred at East Ascension High School on November 10, 1969. Rodney became involved to some extent in that disturbance, and the principal of the high school testified that if Rodney had returned to the school after that date the principal would have suspended him. Defendants take the position that this danger or risk of disciplinary action had some influence on Rodney's decision to go to Ville Platte.
On these facts the trial judge determined that Commissioner Waters and the Executive Committee of the Athletic Association had erred in declaring Rodney ineligible to participate as a member of the Ville Platte High School football team in the fall of 1970. He based that decision on the following factual findings: (1) In the fall of 1969, while the Ville Platte School was closed, or practically closed, boys who were enrolled in the school but were not attending were specifically allowed by the Executive Committee to play football for the Ville Platte School, all of which was a violation of the association's By-laws; (2) the coach of the Ville Platte school was not notified officially that the 1969 relaxation of the rules would not apply in 1970; (3) the Athletic Association apparently acquiesced in the infraction of the rules by the Ville Platte School; and (4) the defendant association is estopped from questioning an infraction of the rules when it did.
The By-laws of the Louisiana High School Athletic Association, including eligibility rules, were adopted by the entire membership of that association. Article I, Section 9 of those by-laws reads in part:
"Rule 1No pupil who enrolls in one high school and later transfers to, or enrolls in, another shall be eligible to represent the latter school in any athletic contest with the following exceptions.
A student shall be considered as enrolled in a high school when he has enrolled and attended any class in that school * * *.
EXCEPTION IIAny pupil after completing one year's attendance from date of enrollment in a high school and fulfilling all other requirements becomes eligible."
*25 Article VI of the Constitution of the Athletic Association contains the following provisions:
"Section 8. The Executive Committee shall make, when necessary, special rules to carry into effect the spirit of fair play and good sportsmanship * *.
"Section 10. The Executive Committee shall constitute a Board of Appeals which shall hear all complaints, appeals from the decision of the Commissioner, decide protests, and interpret the Constitution and By-Laws of the Association. The decision of the Executive Committee is final."
In applying these rules, Waters and the Executive Committee of the Athletic Association concluded that Rodney had not "enrolled" in Ville Platte High School until November 12, 1969, and that he thus did not become eligible to participate in interscholastic athletics until November 12, 1970. Plaintiff contends that Rodney actually enrolled in that high school on September 2, 1969, and that he became eligible to participate as a member of the football team on September 2, 1970. It is argued that the ruling of the Executive Committee was arbitrary because "no student, athlete or otherwise, continuously attended Ville Platte High for one year from September 2, 1969," since the school was closed a part of that time. Also, plaintiff argues that Exception II does not require anything more than one year's attendance in the new school beginning on the date of enrollment. The date of enrollment, he contends, was September 2, 1969.
The general rule in Louisiana is that the courts will not interfere with the internal affairs of a private association, except in cases when the affairs and proceedings have not been conducted fairly and honestly, or in cases of fraud, lack of jurisdiction, the invasion of property or pecuniary rights, or when the action complained of is capricious, arbitrary or unjustly discriminatory. Heuer v. Crescent City River Port Pilots' Association, 158 So.2d 221 (La.App. 4 Cir. 1963); Marino v. Waters, 220 So.2d 802 (La.App. 1 Cir. 1969).
In Marino v. Waters, supra, the Executive Committee of the Louisiana High School Athletic Association ruled that a high school student was ineligible to participate in interscholastic athletics in the school to which he had transferred because the boy's parents had not made a "bona fide move" from one school district to another. The Court of Appeal, First Circuit, in sustaining the ruling of the Executive Committee, held that the court had no power to disturb the action of the private association under the circumstances presented there. The court said:
"The transfer rule of the Louisiana High School Athletic Association has been in effect since around 1920 when the youthful association moved to eliminate the recruiting of high school athletes. The transfer rule, in emphasizing the residence of the parents of the student, is by no means capricious and arbitrary. While it is a rational rule which has apparently produced good results, it is not for this Court to pass upon the merits of this particular rule. This is a matter to be determined by the members of the Association, and it is beyond the power of this Court to impose its ideas of what the rules of the Association should be. * * *
* * * * * *
The courts of other states, when faced with issues similar to the one here involved, involving athletic associations like the LHSAA, have uniformly refused to interfere and interpose their own judgment of what the rules should be. * *
* * * * * *
Under the foregoing reasons and authorities, this Court is of the opinion that it has no power to disturb this enforcement by the Louisiana High School Athletic Association of its rules, and therefore the decision of the trial court is reversed and the injunction there issued *26 is hereby dissolved, and costs are assessed against plaintiff-appellee."
In Heuer v. Crescent City River Port Pilots' Association, supra, plaintiff was suspended as a member of the defendant private association by the association's Board of Directors because of his alleged failure to account for funds. The Louisiana Supreme Court, in refusing to disturb the ruling of the Board of Directors, said:
"The general rule in Louisiana is that the courts will not interfere with the internal affairs of a private association so long as its affairs and proceedings are conducted fairly and honestly, and after due notice to anyone involved. Walsh v. New Orleans Cotton Exchange, 188 La. 338, 177 So. 68; Elfer v. Marine Engineers Beneficial Ass'n, No. 12, 179 La. 383, 154 So. 32; Irwin v. Lorio, 169 La. 1090, 126 So. 669; State ex rel. Rhodes Mortician & Undertaking Co. v. New Orleans Funeral Directors' Ass'n, 161 La. 81, 108 So. 132; Braden v. Lewis, 148 La. 920, 88 So. 117."
Similar rulings have been made by courts of other states. In Morrison v. Roberts, 183 Okl. 359, 82 P.2d 1023 (1938), for instance, the Board of Control of the Oklahoma High School Athletic Association declared a high school senior ineligible to play football for the school because he had accepted an award. The Supreme Court of Oklahoma, in upholding the ruling of the Board of Control, said:
"But so long as these member schools, including the Holdenville school, desire to attach all of these many conditions, limitations, and restrictions on their `eligibles,' then surely they should be permitted to do it, so far as the courts are concerned. There is nothing unlawful or evil in any of those rules nor in the provision resting final authority in the Board of Control. Surely the schools themselves should know better than anyone else the rules under which they want to compete with each other in athletic events. And doubtless every one of these rules is founded upon reasons wholly satisfactory to the member schools. And if the officials of the various high schools desire to maintain membership in the association, and to vest final rule enforcement authority in the board of control, then so far as affects the affairs of the association, the courts should not interfere."
In State ex rel. West Virginia Secondary School Activities Commission v. Oakley, 152 W.Va. 533, 164 S.E.2d 775 (1968), the court refused to interfere with an order of the Board of Appeals of the School Activities Commission, which had ruled that the respondent was ineligible to play football because of his age. In that case the Supreme Court of Appeals of West Virginia said:
"It is well established that courts will not interfere with the internal affairs of such association or organizations except in certain instances not present in the instant case. 6 Am.Jur.2d, Association and Clubs, § 27. It has been repeatedly held by courts of other states where almost the identical matter has been presented as in the case at bar that the courts have no jurisdiction to entertain an appeal from the decisions of such school activities commissions or associations. Sult v. Gilbert, 148 Fla. 31, 3 So.2d 729; Tennessee Secondary School Athletic Association v. Cox, [221 Tenn. 164,] Tenn, 425 S.W.2d 597; State ex rel. Indiana High School Athletic Association et al. v. Lawrence Circuit Court, 240 Ind. 114, 162 N.E.2d 250; Morrison v. Roberts, 183 Okl. 359, 82 P.2d 1023."
In Robinson v. Illinois High School Association, 45 Ill.App.2d 277, 195 N.E.2d 38 (1963), the Appellate Court of Illinois held:
"In the instant case there is no evidence of fraud, collusion or that the defendants acted unreasonably, arbitrarily, or capriciously. A determination of the ineligibility of plaintiff to play interschool basketball was made by those in *27 whom the constitution, by-laws, and rules of the Illinois High School Association vested the power and duty to make that determination.
In the absence of any evidence of fraud or collusion, or that the defendants acted unreasonably, arbitrarily, or capriciously, the Athletic Association must be, under the authorities cited, permitted to enforce its rules and orders without interference by the courts."
In State ex rel. Ohio High School Athletic Association v. Judges of the Court of Common Pleas, 173 Ohio 239, 181 N.E.2d 261 (1962), the Ohio State High School Athletic Association declared two boys ineligible and suspended the school for one year. The Supreme Court of Ohio held, "The penalty imposed by the association is indeed harsh and most severe. However, in the absence of mistake, fraud, collusion or arbitrariness, the decision of the association will be accepted by the Court."
Other cases which we have considered and in which the above-stated rules have been applied are: Tennessee Secondary School Athletic Association v. Cox, 221 Tenn. 164, 425 S.W.2d 597 (1968); Starkey v. Board of Education of Davis County School District, 14 Utah 2d 227, 381 P.2d 718 (1963); Sult v. Gilbert, 3 So.2d 729 (Supreme Court Florida 1941). See also 7 C.J.S. Associations § 34, p. 79; 6 Am.Jur.2d, Associations and Clubs, §§ 6, 7, 8, 27, 28, 37 and 40.
In the instant suit there has been no suggestion of fraud or dishonesty on the part of the Executive Committee of the Athletic Association. That committee clearly had jurisdiction over the question which had been raised as to the eligibility of Rodney Sanders, and we find nothing in the record to show that its ruling was capricious or discriminatory.
Plaintiff argues that the ruling of the Executive Committee was an "extremely arbitrary decision," in that it misapplied the rules of the association and allowed the privilege of participation in interscholastic athletic events to some and not to others.
The argument that the Executive Committee misapplied the rules of the association is based on a difference of opinion as to how the rules should be interpreted. The defendant Athletic Association construes the rules to mean that a student is not "enrolled" in a high school unless he also attends a class in that school. It bases that interpretation of the part of Article I, Section 9, of the By-laws which provides:
"A student shall be considered as enrolled in a high school when he has enrolled and attended any class in that school." (Emphasis added)
Plaintiff contends that the above-quoted provision of the by-laws was not intended to be a definition of "enrollment," insofar as that term is applicable in determining the eligibility of an athlete.
We concede that persuasive arguments can be made to support either position as to the interpretation of this rule relating to eligibility. We are unable to agree with plaintiff, however, that the interpretation placed on it by the Executive Committee is so far out of line or beyond reason as to justify court intervention on the grounds of mistake or arbitrariness.
We find nothing in the record to support plaintiff's argument that defendants have allowed the privilege of participation in interscholastic athletics to some and not to others. Insofar as we have been able to determine from the record, the ruling of the Executive Committee, however harsh and unwise it may appear to be, has not been applied in a discriminatory manner.
It is argued further that the ruling of the Executive Committee was arbitrary and discriminatory because "Defendants made no effort to inquire into the lack of continuous attendance of students at the other numerous schools closed by desegregation." *28 The failure of defendants to inquire as to lack of attendance in other schools, even if we assume that to be true, would not show arbitrariness, mistake or discrimination on the part of the committee in this instance. The record shows that an investigation was made here after a complaint was received by the commissioner as to the eligibility of Rodney. There is no showing that he failed or refused to investigate any other similar complaints. Also, there is nothing in the record to show that the "transfer rule" would not have been interpreted and applied in the same manner if a complaint had been received affecting another school.
Plaintiff contends also that his son is being deprived of a "substantial pecuniary property right" by the ruling of the Executive Committee. He bases that argument largely on the fact that Rodney had demonstrated outstanding ability as a football player, that the football coach at Ville Platte High School testified that he would have recommended Rodney for a scholarship to a university, and that by being excluded from the Class AA playoffs the boy was, or is being, deprived of the opportunity of being viewed by college football coaches.
In Heuer v. Crescent River Port Pilots' Association, supra, it was shown that plaintiff's suspension as a member of the defendant association would prevent him from earning pilot's fees of $30,000.00 a year. Yet, the court held that this was not sufficient grounds to justify interference by the court in the internal affairs of the association.
The First Circuit Court of Appeal rejected a similar argument in Marino v. Waters, supra. There the court said:
"If the pecuniary deprivation involved in Heuer, which was obvious and immediate, was not sufficient to justify the court's interference with the internal affairs of the Association, it seems to follow a fortiori that this court may not interfere to protect a `property right' as speculative and uncertain as the chance of receiving a college athletic scholarship. Further, it is the opinion of the Court, that the participation in interscholastic athletics is not a property right at all, but is a privilege which the school, or a voluntary association whose rules a school agrees to follow, may withdraw if the student fails to qualify for the privilege."
And, in Morrison v. Roberts, supra, the Supreme Court of Oklahoma held:
"The plaintiff has many rights as a citizen and as a high school student, but he has no vested right in `eligibility' as dealt with at such great length in the rules of the Oklahoma High School Athletic Association. The defendant Board of Control was clothed with ample authority to so construe, apply and enforce this rule, with its specific provision for `ineligibility' for one year."
Our conclusion is that plaintiff's son does not have a vested or property right to "eligibility" to participate in interscholastic athletics in a high school, and that plaintiff thus is not entitled to the relief which he seeks on that ground.
Finally, plaintiff contends that the Louisiana High School Athletic Association is not a private association, but instead it is a "governmental agency or quasi-governmental agency masked as a private voluntary association." As authority for that argument he cites Louisiana High School Athletic Association v. St. Augustine High School, 396 F.2d 224 (5th Cir., 1968).
The St. Augustine High School case was one involving an issue of racial segregation and the constitutional questions which accompany a case of that kind. No racial segregation or constitutional questions are presented here. Our state courts have regarded the Louisiana High School Athletic Association as a private association, and the state courts of all other states, as far as we have been able to determine, have considered *29 similar organizations in those states to be private associations. We find, therefore, that the defendant association here is a private, voluntary, unincorporated association, and that the above-cited statutes and jurisprudence relating to such associations are applicable.
Our conclusion is that the evidence presented in this case does not justify interference by the courts with the internal affairs of the Louisiana High School Athletic Association. In our opinion the trial court erred in granting the preliminary injunction sought by plaintiff.
For these reasons the judgment appealed from is reversed, and since that judgment constituted only an interlocutory decree, the case is remanded to the district court. All costs of this proceeding in the trial court and on appeal are assessed to plaintiff-appellee.
Reversed and remanded.
FRUGE, J., recused.