Tennessee Secondary School Athletic Association,
W. M. Davis and A. F. Bridges, Petitioners,

*v.*

Harvey Reid Cox, by Next Friend, R. F. Cox, Respondent.

Tennessee Secondary School Athletic Association,
W. M. Davis and A. F. Bridges, Petitioners,

*v.*

Judson Newman, by Next Friend, Wallace Newman,
Respondent.

425 S.W.2d 597.

(*Knoxville*, September Term, 1967.)

Opinion filed March 6, 1968.

█ 165

Thomas Wardlaw Steele, Nashville, for petitioners; Gullett, Steele, Sanford & White, Nashville, and Foster D. Arnett, Knoxville, of counsel.

Thomas R. Emerson, Knoxville, for respondents; Banks, Smith, Emerson & Daniel, Knoxville, of counsel.

Mʀ. Jᴜsᴛɪᴄᴇ Cʜᴀᴛᴛɪɴ delivered the opinion of the Court.

The respondent, Judson Newman, filed an original bill against petitioners, Tennessee Secondary School Athletic Association, and others, on September 1, 1967, in the Chancery Court of Knox County.

The bill alleged the Association has formulated a set of rules, the pertinent sections of which are quoted as follows:

"A student who attends a private, parochial, or public technical school and participates in athletics cannot transfer to another school within the territory served by these schools without losing his eligibility for a period of twelve months—even though there is a change of residence.

"Except for the eligibility rules in regard to age and to the number of semesters in school, the Board of Control shall have authority to set aside the effect of any eligibility rule upon an individual student when in its opinion the rule fails to accomplish the purpose for which it is intended, or when the rule works an undue hardship upon the student.

"Requests for the consideration of such exceptions shall be acted upon by the Board of Control only twice during each school year—at the fall meeting held the latter part of August and at the January meeting.

"The conditions causing the student to fail to meet the eligibility requirements must have been beyond the control of the school, the student and or his parents, and such that none of them could have reasonably been expected to comply with the rule the violation of which is involved."

He alleged he had been a boarding student at Baylor School, a private boarding school in Chattanooga, for the past two years. That his family had moved from their former residence in Knoxville to an area in Knox County served by Carter High School.

It was alleged during the past year his family had suffered many hardships. There had been, and still was, much serious illness in the family; and complainant was needed at home. And, because of large expenditures resulting from the illness, it was impossible for complainant to return to Baylor School.

Whereupon, complainant registered as a senior at Carter High School for the ensuing year and the Executive Secretary of the Association was notified of the registration.

It was then alleged the Executive Secretary notified the school officials of Carter High School Newman could not engage in football at that school because he was transferring from Baylor.

It was further alleged the Executive Secretary had been contacted several times and requested to grant a hearing to Newman on an application for a waiver of the Association's eligibility rule. That the Executive Secretary had refused the relief by replying the Board of Control met on August 19, 1967, and would not meet again until January, 1968.

It was alleged the action of the Association was harsh, arbitrary, unlawful, and was causing him irreparable harm for the following reasons:

"Carter High School is not within the same territory served by Baylor School of Chattanooga, as required by Section 13 of the defendant Association's rule.

"The Board did not meet in the latter part of August, 1967, but met on August 19, 1967. The Board knew, or should have known, that this early meeting would deprive students of a hearing when they registered for the school year in the latter part of August, 1967.

"The complainant's case is a true bona fide hardship case within the meaning of the rules and regulations.

"The complainant will be deprived of his right to play football during his senior year, unless immediate relief is granted."

Complainant prayed:

"That the defendants be immediately enjoined from enforcing the rules herein described until further orders of the court and upon hearing of this cause on its merits the injunction be made permanent.

"That complainant be permitted to participate in the Carter High School athletic program without any further hindrances from the defendant TSSAA."

Harvey Reid Cox likewise filed a bill in the Chancery Court of Knox County on September 1, 1967. He alleged he had been a boarding student at Castle Heights Military Academy in Lebanon, Tennessee, where he played football. That he lives in an area of Knoxville served by

Powell High School and has registered to attend that school during the ensuing year.

By way of amendment, he further alleged:

"He was advised by defendant, A. F. Bridges, Executive Secretary of Tennessee Secondary School Athletic Association, that if he had gone to West High School in Knoxville, Tennessee instead of Powell High School in Knox County, Tennessee, he would be eligible to participate in the athletic activities of West High School."

The remaining allegations and prayer of the bill are identical to those alleged in the bill filed by Newman.

On the filing of the bills the Chancellor issued a fiat ordering the Association to appear before him on September 8, 1967, and show cause why the injunctions should not be issued as prayed.

Thereafter, the Association filed a demurrer, coupled with a sworn answer, to each bill. There was also filed with the pleadings certain exhibits which support the answer.

The issue raised by the pleadings was whether the Chancery Court had jurisdiction to intervene in the internal affairs of the Association and enjoin the enforcement of its eligibility rules for the benefit of the individual complainants.

The Chancellor heard the matter upon the original bills of complainants and exhibits thereto, the demurrer coupled with an answer of defendants and exhibits filed thereto, and argument of Counsel.

The Chancellor granted a temporary injunction in each case and set the matter for final hearing on October 23, 1967.

Thereafter, petitioners, Tennessee Secondary School Athletic Association; W. M. Davis, a member of the Board of Control of the Association; and A. F. Bridges, Executive Secretary of the Association; presented to a member of this Court their petitions for the common law writs of certiorari and supersedeas seeking to supersede the interlocutory orders of the Chancellor granting the temporary injunctions. The writs were granted reversing and superseding the decrees complained of, ordering the clerk of this Court to file the petitions, transcripts and briefs and to place the matter on the docket for the January Term 1968, for final hearing before this Court.

The matters were argued at the Bar of this Court on January 10, 1968.

It is the insistence of respondents the Association, through its Board of Control, acted arbitrarily, capriciously, and unreasonably in refusing to allow respondents to participate in athletics at their respective schools by application of its hardship rules. Respondents also insist the Chancellor had jurisdiction to intervene in the controversy and grant the relief sought.

It is shown in the record Tennessee Secondary School Athletic Association is a voluntary association comprised of secondary schools in the State. Most of the secondary schools in the State are members. Its purpose is to stimulate and regulate the athletic programs of its members.

The rules and regulations by which the purpose of the Association is accomplished are, under the constitution

of the Association, fixed by its Legislative Council, which consists of one representative from each Athletic District and which functions as the legislative or policy making body of the Association. These rules are set out in the by-laws of the Association.

The administrative authority of the Association is vested in a Board of Control; which, also, consists of one representative from each Athletic District, which Board is responsible for the general administration of the affairs of the Association; and, also acts as ''a final court of appeals.''

Under the by-laws, regular meetings of the Board of Control are held in January, March and August of each year.

The Board of Control, and only that Board, has authority to waive eligibility rules. The consideration of such waiver must be acted upon by the Board of Control only twice during each year; that is, ''at the fall meeting held the latter part of August and at the January meeting.'' The Board has no authority to waive this rule.

A handbook of the Association, containing its constitution, by-laws, rules and interpretations is distributed annually to its members.

The Association publishes a monthly news bulletin which is distributed to its members, including the schools involved in these cases. In June, 1967, the Association released a news bulletin in which it gave notice the Board of Control would meet on August 19, 1967, in Nashville at nine A.M., to consider hardship cases, with instructions to its members to file such applications with supporting information prior thereto.

The record shows fifteen applications for waiver of eligibility rules were filed and considered at this meeting. Some were granted and some were denied.

The record shows that on August 16, 1967, the principal of Carter High School filed a registration of eligibility form with the Association in which it was reported complainant, Newman, had transferred to Carter High School. The Association received this communication on August 18, 1967.

Neither the officials of Carter High School nor Newman made application to the Board of Control for a waiver of eligibility rules.

The principal of Carter High School knew prior to August 19, 1967, Newman had transferred to the school. Notice of the meeting had been given to members of the Association in June 1967. It was not the fault of the Association the principal did not make application for a waiver of eligibility when he wrote the Association on August 16, 1967.

Subsequent to the meeting of the Board, the coach at the Carter High School, and some other persons, wrote the Executive Secretary with respect to a hearing for Newman. The Secretary replied he had no authority to grant a special hearing or to waive the eligibility rules of the Association.

Thus, it is clear the action of the Executive Secretary was not arbitrary as alleged. As stated, the Board of Control alone can waive eligibility rules and only at either its August or January meetings.

We see no merit in the allegations since Carter High School and Powell High School are not within the same

territories served by Baylor School and Castle Heights Military Academy the action of the Association in refusing to waive its eligibility rules was beyond its jurisdiction. It is conceded both Newman and Cox were residents of Knoxville and had attended Baylor and Castle Heights, respectively.

Nor is there any merit in the allegations the Board of Control did not meet the latter part of August, 1967, but met on August 19, 1967; and, therefore, the Board knew, or should have known, a boy would be deprived of a hearing by an early meeting. The nineteenth day came within the latter part of the month. Both schools were notified in June, 1967, the meeting would be held on that date.

Passing now to the Cox case, the record shows the principal of Powell High School, prior to August, 1967, notified the Executive Secretary of the Association he desired to make application to the Board of Control at its August meeting for a waiver of the eligibility of Cox.

In support of the application, statements of the Headmaster of Castle Heights, the father of Cox, and other pertinent information, were filed.

The minutes of the Board of Control show a motion to deny the application was unanimously adopted. The officials of Powell High School were notified of the decision.

The general allegation contained in the amendment to the bill of Cox that the Executive Secretary told him he would be eligible to play football at West High School is insufficient to show the Board acted arbitrarily or illegally in denying a waiver of his eligibility.

Thus, there is no showing the proceedings before the Board were not pursuant to the rules of the Associa-

tion. Nor is it shown wherein the proceedings were not conducted in good faith and lawfully.

"It is well established the courts will not interfere with the internal affairs of voluntary associations, except in such cases as fraud, lack of jurisdiction, or the invasion of property rights or interests." 6 Am. Jur. (2d), Associations and Clubs, Section 27, page 453.

In *Robertson v. Walker,* 62 Tenn. 316 (1874), complainants were expelled from membership in a voluntary charitable association, known as the Good Samaritan. The complainants sought the aid of the court to restore their membership. This Court said:

"The parties having no individual property rights to be asserted, the question is, can a court of chancery, under the facts of the case, restore them to their position as members of the society? We can see no ground on which such relief can be granted."

To the same effect, see the case of *Peoria Commission Company v. Memphis Merchants' Exchange,* 3 Tenn. Civil Appeals, 339 (1913), wherein the following was quoted with approval:

"* * * Where such by-laws infringe no public policy or rule of law and are not unreasonable, courts will never interfere to control their enforcement, but such corporations or associations will be left to enforce their rules and regulations in the manner they have adopted for their own government and methods of discipline."

In the case of *Morrison v. Roberts,* 183 Okl. 359, 82 P.2d 1023 (1938), a senior at an Oklahoma high school brought an action for a writ of mandamus to review an

order of the Board of Control of Oklahoma High School Athletic Association, declaring him ineligible to participate in athletic contests for a year for having accepted an award in contravention of a rule of the Association. In refusing to grant the writ the court said:

"But so long as these member schools, including the Holdenville School, desire to attach all of these many conditions, limitations, and restrictions on their 'eligibles,' then surely they should be permitted to do it, so far as the courts are concerned. There is nothing unlawful or evil in any of those rules nor in the provision resting final authority in the Board of Control. Surely the schools themselves should know better than anyone else the rules under which they want to compete with each other in athletic events. And doubtless every one of these rules is founded on reasons wholly satisfactory to the member schools. And if the officials of various high schools desire to maintain membership in the association, and to vest final rule enforcement authorities in the Board of Control, then, so far as affects the affairs of the association, the court should not interfere."

The cases cited below support the rule courts will not interfere in the internal affairs of a voluntary high school athletic association. In all of the cases the courts have held they have no jurisdiction to interfere as in the case of *Morrison v. Roberts,* supra, *Robinson v. Illinois High School Association,* 45 Ill.App.2d 277, 195 N.E.2d 38 (1963); *State ex rel. Ohio High School Athletic Association v. Judges of the Court of Common Plea,* 173 Ohio St. 239, 181 N.E.2d 261 (1962); *Sult v. Gilbert,* 148 Fla 31, 3 So.2d 729 (1941); and *State ex rel. Indiana*

*High School Athletic Association v. Lawrence Circuit
Court,* 240 Ind. 114, 162 N.E.2d 250 (1959).

"Equity may not be invoked to supply a remedy
until a right, legal or equitable, exists." *Vanderbilt
University v. Williams,* 152 Tenn. 664, 280 S.W.689
(1926).

■ Neither respondent has a legally recognized right
to participate in high school athletics. The right to par-
ticipate is a mere privilege. *Starkey v. Board of Educa-
tion of Davis County School District,* 14 Utah 2d 227,
381 P.2d 718 (1963) ; *State ex rel. Indiana High School
Athletic Association v. Lawrence Circuit Court,* supra;
*Morrison v. Roberts,* supra.

In the Starkey case the court said:

"We have no disagreement with the proposition
advocated that all students attending school should be
accorded equal privileges and advantages. But the
participation in extracurricula activities must neces-
sarily be subject to regulations as to eligibility. En-
gaging in them is a privilege which may be claimed
only in accordance with the standards set up for par-
ticipation. It is conceded, as plaintiff insists, that he
has a constitutional right, both to attend school and to
get married. But he has no 'right' to compel the Board
of Education to exercise its discretion to his personal
advantage so he can participate in the named activity."

■ This Court, or a member thereof, has the authority
to grant the writ of certiorari and the writ of super-
sedeas in aid thereof to review an interlocutory order
of the lower court where such court has exceeded the
jurisdiction conferred and there is no other plain, speedy

or adequate remedy. T.C.A. Section 27-801; *Clements v. Roberts,* 144 Tenn. 129, 230 S.W. 30 (1920); *Connors v. City of Knoxville,* 136 Tenn. 428, 189 S.W. 870 (1916).

■ The Court being of the opinion the court below was without jurisdiction and acted illegally in granting the injunctions upon the allegations contained in respondents' bills, the petitions for writs of certiorari and supersedeas are sustained, and the proceedings in the lower court will be superseded and the bills dismissed. *Clements v. Roberts,* supra.

Respondents are taxed with the costs accruing both in this Court and in the court below.

BURNETT, CHIEF JUSTICE, and DYER and HUMPHREYS, JUSTICES, concur.

CRESON, JUSTICE, dissents.