# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**July 10, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

JOHN ROBERTSON,     )
             )
  Plaintiff/Appellant,   )
             )  Marshall Circuit
VS.          )  No. 12591
             )
TENNESSEE WALKING HORSE )  Appeal No.
BREEDERS' AND EXHIBITORS' )  01A01-9610-CV-00456
ASSOCIATION,      )
             )
  Defendant/Appellee.   )

APPEAL FROM THE CIRCUIT COURT
FOR MARSHALL COUNTY
AT LEWISBURG, TENNESSEE

THE HONORABLE LEE RUSSELL, JUDGE

For Plaintiff/Appellant:       For Defendant/Appellee:

Donald E. Parish         Marc O. Dedman
Ivey, Parish & Johns        Julie-Karel Elkin
Huntingdon, Tennessee      Spicer, Flynn & Rudstrom
               Nashville, Tennessee

               Diane Segroves
               Bobo, Hunt & Bobo
               Shelbyville, Tennessee

# AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal arises from a breeder's expulsion from the Tennessee Walking Horse Breeders' and Exhibitors' Association. The Association revoked the breeder's membership and permanently suspended his horse registration privileges for registering a false pedigree for two horses. The breeder sued the Association in the Circuit Court for Marshall County alleging wrongful expulsion and defamation and seeking reinstatement. After considering the parties' cross-motions for summary judgment, the trial court granted the Association's motion and dismissed the case. On this appeal, the breeder asserts that the Association failed to follow its own bylaws and thereby deprived him of a valuable property right without adequate notice. We have determined that the Association substantially complied with its bylaws and rules and provided the breeder with fair notice and an opportunity to be heard. Accordingly, we affirm the trial court's decision to grant the Association's summary judgment motion.

## I.

John Robertson breeds and exhibits Spotted Tobiano walking horses. He has bred walking horses on his farm near Camden, Tennessee since 1957. Before his expulsion, he was a member of the Tennessee Walking Horse Breeders' and Exhibitors' Association, a nonprofit corporation whose purpose is to protect the industry by maintaining a registry of the pedigrees of Tennessee walking horses. As a member of the Association, Mr. Robertson had the privilege of registering his walking horses' pedigrees which substantially increased their sale prices and stud fees.

In 1985, the Association began a new program requiring blood typing for each stallion foal and stallion used for production before an owner could register their offspring. Five years later, the Association began requiring that stallion foals be checked or qualified to their sire, which means that each colt's blood type would be checked against its sire's blood type. The Association broadened the rule in 1993 to require verification of the sire and dame of each foal before it could be registered.

The Association first became concerned about Mr. Robertson's registration practices when the purchaser of one of his horses, a horse named Rock N Roll Parader, attempted to register one of Rock N Roll Parader's foals. When blood tests revealed that Rock N Roll Parader could not be the foal's sire, the Association compared a photograph of Rock N Roll Parader submitted with his original registration documents with a photograph of the foal's sire and determined that the photographs were of two different horses.

In order to rule out the possibility of a mistake, the Association tested Mr. Robertson's only other spotted stallion, a horse named Paint Me Delight. The results of these blood tests were identical to the tests of another horse named Romeo's Jet. Even though the registration of Romeo's Jet listed Delight's Romeo as the sire, the blood testing ruled out the possibility that Delight's Romeo could be the sire of Romeo's Jet. The Association also discovered that the photographs attached to the registration papers for both Rock N Roll Parader and Paint Me Delight depicted the same horse, although one of the photographs had been altered slightly.

This information prompted the Association to suspect that Mr. Robertson had provided false blood samples, false information, and false photographs to the Association when registering Rock N Roll Parader and Paint Me Delight. Since this false registration affected not only Rock N Roll Parader and Paint Me Delight but also their offspring and other breeders, the Association informed Mr. Robertson by letter dated May 12, 1994, that disciplinary proceedings had been commenced and that he had been charged with possible fraudulent registration of Rock N Roll Parader and Paint Me Delight. This letter also informed Mr. Robertson that there would be a hearing and that he had a right to be represented by counsel and to call witnesses. It explained to him the possible penalties that could be imposed if he was found to have violated the Association's registration rules.

The Association wrote Mr. Robertson another letter on June 1, 1994 informing him of the date, time, and location of the hearing and again advising him of his procedural rights. The Association's executive director wrote a third letter to Mr. Robertson on June 17, 1994, reminding him of the allegations against him and enclosing a copy of the Association's rules and bylaws. At the June 27, 1994 hearing, Mr. Robertson chose to appear without counsel and declined the Association's offer

to continue the proceedings. On June 28, 1994, the Association informed Mr. Robertson that his membership had been revoked for violation of the Association's registration rules and that he could no longer register horses with the Association.

On May 8, 1995, Mr. Robertson sued the Association in the Circuit Court for Marshall County seeking reinstatement and damages for defamation. Mr. Robertson moved for a partial summary judgment on his reinstatement claim, and the Association responded with its own summary judgment motion seeking dismissal of all claims. The trial court granted the Association's summary judgment motion, and Mr. Robertson has appealed. While he does not contest the dismissal of his defamation claim, he takes issue with the dismissal of his claim for reinstatement as a member of the Association.

## II.

An order granting a motion for summary judgment enjoys no presumption of correctness on appeal. *See City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn. 1997); *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 894 (Tenn. 1996). Accordingly, reviewing courts must make a fresh determination concerning whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997). Summary judgments are appropriate only when there are no genuine factual disputes with regard to the claim or defense embodied in the motion and when the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04; *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

When reviewing an order granting a summary judgment motion, an appellate court must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Mike v. Po Group, Inc.*, 937 S.W.2d 790, 792 (Tenn. 1996). Thus, a summary judgment should be granted only when the undisputed facts reasonably support only one conclusion – that the moving party is entitled to a judgment as a matter of law. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d at 26. A party may obtain a

summary judgment by demonstrating that the nonmoving party will be unable to prove an essential element of its case, *see Byrd v. Hall*, 847 S.W.2d 208, 212-13 (Tenn. 1993), because this defect necessarily renders all other facts immaterial. *See Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993); *Strauss v. Wyatt, Tarrant, Combs, Gilbert & Milom*, 911 S.W.2d 727, 729 (Tenn. Ct. App. 1995).

## III.

The courts are generally reluctant to interfere in the internal affairs of private organizations and clubs. *See Original Lawrence County Farm Org., Inc. v. Tennessee Farm Bureau Fed'n*, 907 S.W.2d 419, 421 (Tenn. Ct. App. 1995); *Moran v. Vincent*, 588 S.W.2d 867, 870 (Tenn. Ct. App. 1979). It is only when a case involves fraud, lack of jurisdiction, or an invasion of property rights that the courts will intervene in a dispute between an association and one of its members. *See Tennessee Secondary School Athletic Ass'n v. Cox*, 221 Tenn. 164, 174, 425 S.W.2d 597, 601 (1968). When a member has been expelled, suspended, or excluded from membership for cause, a court should look no further than necessary to establish that the procedure involved was fair and reasonable. *See* Tenn. Code Ann. § 48-56-302 (1995); *Original Lawrence County Farm Org., Inc. v. Tennessee Farm Bureau Fed'n*, 907 S.W.2d at 422.

Mr. Robertson argues that the Association failed to follow its own Rule 19 which provides, in part:

> 19.03 A complaint may be filed by any member of the Association with the Executive Secretary as follows:
> A. In writing.
> B. Contain a reasonably clear description of the offense and cite the Rule(s) allegedly violated.
> C. Be signed by the member.
> D. State the full name and address of the respondent.
> E. Be accompanied by a deposit of $25 which will be refunded only if the complaint is sustained.
>
> 19.04 The Executive Secretary shall immediately notify the respondent of the complaint and send a copy, set a hearing date, notify the parties of the date.
> 19.05 The hearing shall be conducted within 40 days of the receipt of the complaint.
> 19.06 The hearing shall allow each party to fairly and adequately present their case.

> 19.07 The decision shall be made on the date of the conclusion of the hearing. The deliberations shall be in private and the parties notified by mail.

He asserts that the Association's failure to provide him with a written complaint signed by an Association member and the Association's failure to identify the person who lodged the complaint undermined the fairness of the proceeding. He also asserts that the Association's failure to inform him of the identity of the person who lodged the complaint or to state precisely how the two registrations were fraudulent misled him into believing that the proceeding was not governed by the disciplinary rules and confused him about the need to retain counsel.

The Association's investigation was not commenced because of a member's complaint but rather because of registration discrepancies the Association itself discovered while processing the registration of a horse thought to be the foal of Rock N Roll Parader. We do not read Rule 19 as the exclusive method by which the Association may discipline its members. Rather, it provides a procedure for processing complaints made by one Association member against another. The rule does not preclude the Association itself from investigating and filing charges against one of its members based on information it has discovered on its own.

Mr. Robertson had adequate notice of the charges against him, the hearing date, the possible penalties, and the procedure provided by the rules. The Association sent him three letters informing him that he had been charged with possible fraudulent registration of Rock N Roll Parader and Paint Me Delight, and that he had the right to be represented by counsel and to question witnesses at the hearing. He was also provided with notice of the date, time, and location of the hearing, an explanation of the possible penalties that could be imposed, and a copy of the Association's rules and bylaws.

Mr. Robertson attended the hearing without counsel and specifically declined an offer of postponement. At that hearing, it was established that Mr. Robertson had sold Paint Me Delight to another Association member and that he had later agreed to take the horse back when it did not qualify to its named sire. Mr. Robertson replaced Paint Me Delight with Rock N Roll Parader. After Rock N Roll Parader produced four foals, retesting revealed that he was not the same horse that had been originally registered as Rock N Roll Parader. At this point, Mr. Robertson permitted Paint Me

Delight to be blood typed, and this test revealed that the animal was actually Romeo's Jet. These facts, together with the statement in the Association's correspondence that the "Enforcement Committee . . . has lodged a complaint concerning the possible fraudulent registration" of Paint Me Delight and Rock N Roll Parader put Mr. Robertson on fair notice of the charges against him. Accordingly, like the trial court, we have determined that the Association substantially complied with its disciplinary rules and that Mr. Robertson was given fair notice of the charges against him and a fair opportunity to be heard before the Association revoked his membership.

## IV.

We affirm the summary judgment dismissing Mr. Robertson's claims against the Association and remand the case for whatever further proceedings may be required. We tax the costs of this appeal to John Robertson and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
SAMUEL L. LEWIS, JUDGE


_____
BEN H. CANTRELL, JUDGE