IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 3, 2012

## BOBBY MacBRYAN GREEN v. JODI JONES, ET. AL.

**Appeal from the Chancery Court for Washington County**
**No. 41049     Hon. G. Richard Johnson, Chancellor**

_____

**No. E2011-02587-COA-R3-CV-FILED-JULY 10, 2012**

_____

A neighborhood association president, fearing that members conspired to improperly oust him at an upcoming meeting, filed suit, requesting declaratory relief regarding the proper procedure for removal of a president. Prior to a hearing, the members voted to remove him from office and filed a motion to dismiss, alleging that the complaint failed to state a claim upon which relief could be granted. The court dismissed the complaint and denied a subsequent motion to alter or amend its judgment. The president appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Bobby MacBryan Green, M.D., Johnson City, Tennessee, appellant, pro se.

Howell H. Sherrod, Jr.,[1] Johnson City, Tennessee, for the appellees, Jodi Jones, Betty Ann Polaha, and Mary Lee Jondahl.

**OPINION**

**I. BACKGROUND**

The Southside Neighborhood Association ("SNO") is an unincorporated association located in Johnson City, Tennessee, that is comprised of individuals living in the general

---

[1]Mr. Sherrod, a licensed attorney, was originally a party to this action but was removed by agreement.

Southside area who are supportive of the association's goals. Bobby MacBryan Green, M.D. ("President") attained the position of president of SNO in October 2009 and was elected to a two-year term as president of the executive board in November 2010. Likewise, Jodi Jones ("Vice President"), Betty Ann Polaha ("Secretary"), and Mary Lee Jondahl ("Treasurer") were all members of the executive board. Pursuant to its bylaws, SNO held regular elections for its executive board positions but allowed removal of a board member or committee chair in specific circumstances. The bylaws provided that "all questions not specified" in the bylaws were governed by Robert's Rules of Order, Revised ("RROR").

On June 22, 2011, Vice President called a special meeting for Sunday, June 26 in order to determine whether President should be discharged from his elected position on the executive board. She explained that she was unable to secure a date on which all members could be present and advised the members that they could still participate through a live conference call or submit their votes by notarized letter.

The next day, President filed a complaint in chancery court, alleging that Vice President, Secretary, and Treasurer (collectively "the Board") had "demonstrated an intent to violate [his] rights by precipitately convening the [e]xecutive [b]oard." He asserted that Vice President set the meeting on a date that he and other members who were supportive of him could not attend. He complained that the call for a meeting did not "suggest[] any intention to conduct a trial based upon due process" and that the suggested procedure for removal was contrary to RROR. President requested relief, asking the court to declare:

> (a) the names of the current members of the [e]xecutive [b]oard of [SNO];
>
> (b) the limits of the power of the [e]xecutive [b]oard of [SNO];
>
> (c) the appropriate procedure for ouster of [President] or any officer; and
>
> (d) the appointment of an impartial [Rule 31 mediator] to supervise all stages of any effort to remove [President] from office.

President also filed a petition for a restraining order, asking the court to forbid any meeting for the purpose of removing him from office for any reason other than his incapacitation, any effort to remove him from office except in accordance with RROR, any meeting leading to his removal without the supervision of a mediator, and any attempt to prevent him from executing his duties and lawfully prescribed powers.[2]

---

[2]The restraining order was denied by the Honorable Thomas J. Seeley, Judge sitting by interchange.

Following the scheduled meeting at which the President was discharged from his position, the Board responded to the complaint by asserting that the request for relief was inappropriate and unavailable because President had been removed from office "due to his inappropriate and disruptive conduct for approximately one year." The Board also filed a motion to dismiss the complaint "for failure to state a claim on which relief can be granted" with attached affidavits, providing that President was removed

> on June 26, 2011 by action of the [e]xecutive [c]ommittee properly convened after proper notice with the appropriate number of attendees in their official capacity as members of the [e]xecutive [c]ommittee by a vote in excess of seventy-five (75%) in favor of removing him.

In response, President filed a motion for supplemental pleadings and a motion for a temporary injunction, requesting his reestablishment as President. The Board filed an amended answer and counterclaim, asserting that President's continued harassment of SNO members and officers was "intentionally calculated to harass, embarrass, and intimidate" and that they were entitled to compensatory and punitive damages.

Following a hearing, the court dismissed the complaint against the Board, finding that President had been properly removed as president of SNO. The court also attached a list of items that had been retained by President and directed him to return those items to SNO. President filed a motion to alter or amend, asserting, among other claims, that the court erroneously considered evidence outside of the complaint in granting the motion to dismiss.[3] He asserted that because the court had considered matters outside the pleading, namely the affidavits and the Board's answer to the complaint, the court should have treated the motion to dismiss as a motion for summary judgment, allowing him to conduct discovery. He also asserted that he had set forth a valid cause of action and that the court's grant of the motion prevented him from presenting "crucial facts" that occurred during the pendency of the hearing. He attached a statement of these facts in the event that future proceedings for summary judgment were needed. The court denied President's motion to alter or amend by written order and in open court, by stating

> [SNO is] a nonprofit association composed of residents of the south side of Johnson City. And . . . for whatever reason, [SNO] did not want [President] as its [p]resident and it did not want him as a member. Now that's between [SNO] and [President]. There's no doubt that a voluntary organization has the right to say who can belong and who cannot belong.

---

[3] Approximately one week after the motion to alter or amend was filed, SNO revoked President's membership and returned his membership dues.

* * *

[President] complains about the result of the hearing [on the motion to dismiss] but he did not attend the hearing. He had a very able, qualified, experienced lawyer that appeared for him and who did, I'm sure, as good a job as he could possibly do. Today, [President] doesn't have any new evidence in support of the [m]otion. He doesn't cite any change in the law since the [m]otion. The [c]ourt finds that there's been no injustice here that needs to be corrected, that [President], in spite of his protest, was given a due process hearing, was given a fair hearing with all the notices and all the parties present. The [c]ourt, most respectfully, denies the [m]otion to [a]lter or [a]mend.

## II. ISSUES

We consolidate and restate the issues raised on appeal as follows:

A. Whether the court erred in dismissing President's complaint.

B. Whether the court erred in denying President's motion to alter or amend the court's order dismissing the case.

## III. STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

## IV. DISCUSSION

### A.

A motion to dismiss for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof[;] therefore, *matters outside the pleadings should not be considered* in deciding whether to

-4-

grant the motion." *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002) (emphasis added). In this case, the trial court considered the Board's affidavits, "evidence introduced into open court, the argument of counsel, the stipulation of the parties" and the entire record. When a court considers matters outside the pleadings, a motion to dismiss for failure to state a claim upon which relief can be granted "shall be treated as one for summary judgment." Tenn. R. Civ. P. 12.02. Accordingly, we will review the dismissal of the case "using the standards applicable to summary judgment." *King v. Betts*, 354 S.W.3d 691, 711 (Tenn. 2011); *see also Chambers v. First Volunteer Bank of Tennessee*, No. E2011-00020-COA-R3-CV, 2011 WL 3241836, at *3 (Tenn. Ct. App. July 29, 2011) (upholding a trial court's decision to dismiss the case after reviewing the dismissal pursuant to summary judgment standards).

Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. A properly supported motion for summary judgment "must either (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 9 (Tenn. 2008). When the moving party has made a properly supported motion, the "burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id.* at 5; *see Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). The nonmoving party may not simply rest upon the pleadings but must offer proof by affidavits or other discovery materials to show that there is a genuine issue for trial. Tenn. R. Civ. P. 56.06. If the nonmoving party "does not so respond, summary judgment, if appropriate, shall be entered." Tenn. R. Civ. P. 56.06.

On appeal, this court reviews a trial court's grant of summary judgment de novo with no presumption of correctness. *See City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn. 1997). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox. Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

We acknowledge that this case presents a "procedural anomaly of sorts in that we must treat the [Board's] motion to dismiss as a motion to for summary judgment, yet no statement of undisputed material facts" exists. *Chambers*, 2011 WL 3241836, at *5.

Additionally, President was not given the opportunity to offer additional proof by affidavits or other discovery materials to show that there was a genuine issue for trial. Tenn. R. Civ. P. 56.06. However, we do not believe that these alleged shortcomings of the record preclude review of the dismissal of this case when "in absence of fraud, lack of jurisdiction, or the invasion of property rights, courts should not interfere with the internal affairs of voluntary associations." *Holder v. Celsor*, 914 S.W.2d 496, 500 (Tenn. Ct. App. 1995); *see Robertson v. Walker*, 62 Tenn. 316 (Tenn. 1874) (holding that the court could not restore a person's membership to a voluntary charitable association). When an association has adopted its own bylaws, courts will not interfere to control the enforcement of them "[w]hen such by-laws infringe no public policy or rule of law and are not unreasonable." *Tennessee Secondary Sch. Athletic Ass'n v. Cox*, 425 S.W.2d 597, 601 (Tenn. 1968) (internal citation and quotation omitted). Thus, "associations will be left to enforce their rules and regulations in the manner they have adopted for their own government and methods of discipline." *Id.* (internal citation and quotation omitted).

In this case, the bylaws allowed any member in good standing to call a special meeting and provided specific rules for the executive board to follow when attempting to remove an officer or committee chair from his or her position on the executive board. Specifically, the bylaws provided,

> The Executive Board shall have the authority and the responsibility to discharge by a three-fourth (3/4) vote *any* officer or committee chair who becomes incapacitated or otherwise fails to carry out the responsibilities of the office. In such event, the Executive Board shall appoint a successor to serve until the next installation of officers.

(Emphasis added). The bylaws further provided that "a vacancy in office after installation shall be filled by the [e]xecutive [b]oard, except as stated for the President which would be filled by the Vice-President." Thus, the Board did not need to look to RROR in attempting to discharge President from his position because the bylaws provided the proper procedure for discharge of an officer or committee chair. Here, President was removed after a special meeting was called and a vote was held pursuant to the bylaws, which are not unreasonable and do not violate public policy or a rule of law.

Citing *Nelson v. Sneed*, 83 S.W. 786 (Tenn. 1904), President claims that he had a property interest in his position as president of SNO and that the Board's interference with that property interest was improper. While President presents an interesting argument, his claim is simply without merit. The Court's decision in *Nelson* related to an election contest for a circuit court judgeship. President's contested removal from an executive board position in a voluntary, unincorporated association is easily distinguishable from judicial elections

that are governed by the Tennessee Code. Tenn. Code Ann. § 17-1-103; *see also* Tenn. Code Ann. § 2-17-101 (providing that election contests are filed in chancery court). President's position was unpaid and did not require anything from him other than his assistance with the oversight of the organization. Accordingly, we decline to hold that President had a property interest in his position on the executive board of a voluntary, unincorporated association.

Likewise, President's assertion that his signing of the bylaws created a "reciprocal contract" between himself and SNO is also without merit. He alleges that each party was charged with the reciprocal duty of good faith and fair dealing, which was violated by the Board's disregard of the bylaws and RROR. As previously stated, the Board did not disregard the bylaws. Additionally, a contract is "[a]n agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law." Black's Law Dictionary (9th ed. 2009). The bylaws did not create any obligations between its members and the association. While President's voluntary but elected position required his agreement to oversee the association, his position did not entitle him to any corresponding obligation from SNO.

With all of these considerations in mind and after viewing the evidence and all reasonable inferences in the light most favorable to President, we conclude that there were no genuine issues of material fact and that the Board was entitled to judgment as a matter of law because President failed to assert a claim upon which relief could be granted. Accordingly, we further conclude that the trial court did not err in granting the Board's motion to dismiss.

B.

A party may file a motion to alter or amend a judgment within 30 days after the entry of the judgment. Tenn. R. Civ. P. 59.04. This court reviews a trial court's decision to deny a motion to alter or amend a judgment under an abuse of discretion standard. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). "The purpose of a Rule 59.04 motion to alter or amend a judgment is to provide the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). These motions should "be granted when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice." *Id.* These motions "should not be used to present new, previously untried or unasserted theories or legal arguments." *Id.* If new evidence is raised in a motion to alter or amend a grant of summary judgment, the court should consider "the moving party's effort to obtain the evidence in responding to the summary judgment; the importance of the new evidence to the moving party's case; the moving party's explanation for failing to offer the evidence in responding to the summary judgment; the unfair prejudice

to the non-moving party; and any other relevant consideration." *Stovall*, 113 S.W.3d at 721 (citing *Harris v. Chern*, 33 S.W.3d 741, 744 (Tenn. 2000)).

In support of his motion to alter or amend, President asserted that the court's order of dismissal prevented him from presenting additional "crucial facts" in support of his case and that his facts supporting his claim were never refuted. The facts submitted by President are of no importance to this case given our conclusion that President failed to assert an actual claim upon which relief could be granted. Accordingly, we further conclude that the court did not abuse its discretion in denying President's motion to alter or amend the order dismissing his case. President raised a myriad of other issues relating to the dismissal of his complaint and the alleged injustice of the proceedings resulting in the erroneous dismissal of his complaint. Having concluded that the court did not err in dismissing the complaint or in denying the motion to alter or amend, we conclude that these issues lack merit. President also raised an issue regarding the validity of the Board's counterclaim. This issue is not properly before this court because this appeal relates to the dismissal of the complaint, not the validity of the counterclaim. Upon remand, the case may proceed on the Board's counterclaim, allowing President to defend against that claim in any manner consistent with the Tennessee Rules of Civil Procedure.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Bobby MacBryan Green.

_____
JOHN W. McCLARTY, JUDGE