IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 20, 2019 Session

## MELANIE ROBERTSON ET AL. v. TENNESSEE SECONDARY SCHOOL ATHLETIC ASSOCIATION

**Appeal from the Chancery Court for Shelby County**
**No. CH-18-1312     Jim Kyle, Chancellor**

———————————————————

### No. W2019-00015-COA-R3-CV

———————————————————

Based on its bylaws, Appellant Tennessee Secondary School Athletic Association denied three students, Appellees herein, permission to play football at a local high school. Appellees filed a petition for restraining order and for temporary and permanent injunctions asking the trial court to prohibit the Association from denying the Students permission to play football. The trial court immediately granted temporary injunctions; later, the trial court granted permanent injunctions. Appellant appeals. Based on the allegations contained in Appellees' petition, the trial court did not have authority to interfere in the internal affairs of TSSAA concerning the Students' eligibility to play football for the 2018-2019 school year. Therefore, we reverse and remand the case with instructions to the trial court to dismiss the case and collect the costs.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Richard L. Colbert, John J. Griffin, Jr., Nashville, Tennessee, for the appellant, Tennessee Secondary School Athletic Association.

### OPINION

### I. Background

Tennessee Secondary School Athletic Association ("TSSAA" or "Appellant") is a not-for-profit voluntary association of 430 private and public Tennessee schools. "Its purpose is to stimulate and regulate interscholastic athletic competition between its member schools in accordance with the standards those schools establish in the TSSAA

Bylaws . . . ." The member schools elect representatives to the TSSAA Legislative Council; these representatives write the Association bylaws. The TSSAA Director, Mr. Bernard Childress, enforces the bylaws, and his decisions are subject to review by the TSSAA Board of Control. Schools in Tennessee are not required to join TSSAA, and membership is by annual contract.

Melanie Robertson, Cedric Lynn, and Darlene Shinault are the parents of Cailon McGhee, Justin Lynn, and Tarique Barnes (together, the "Students" or "Appellees"), respectively. The Students were high school seniors when the original petition was filed. The Students played football at East High School ("East") for Coach Marcus Wimberly in the fall of 2017. In January 2018, Cordova High School ("Cordova") announced that Coach Wimberly would be its football coach for the 2018-2019 school year. During January and February 2018, after the above announcement, all three Students withdrew from East and enrolled at Cordova. On August 3, 2018, Cordova submitted transfer eligibility requests to TSSAA for determinations on the football eligibility of all three Students for the 2018-2019 school year.

Based on the information submitted by Cordova, TSSAA determined that all three Students were ineligible to play football at Cordova under Article II, Section 13(e) of TSSAA's bylaws, which states, in pertinent part:

> If a student with an athletic record transfers to a new school where an "athletic coaching link" existed in the past 12 months, that student is ineligible for 12 months past their first date of enrollment at the new school at all levels in the specific sports where a linkage was present. Links may include (1) attendance at an individual camp (and then transferring); (2) playing on non-school (independent) teams (and then transferring to that coach's school); (3) **transferring into a school where a former coach has been hired**; and (4) transferring to a school where a former or current personal trainer or strength and conditioning coach is employed.

(emphasis added).

Specifically, TSSAA found that the "coaching link" rule prohibited the Students from playing football at Cordova, where their former coach from East had recently been hired. Following TSSAA's determination, Cordova submitted hardship requests for the Students. According to Mr. Childress's declaration, which is contained in the record,

> Article II, Section 24, of the TSSAA's Bylaws, [is] commonly known as the "hardship rule," [which states that] a member school may request a discretionary exception to the normal effect of an eligibility rule on a given student. Such a discretionary exception is not guaranteed under any circumstances, but it may be considered if four prerequisites are satisfied:

- 2 -

(a) the circumstances causing the student to fail to satisfy the eligibility rule are unforeseen and unavoidable; (b) application of the rule to the student works an undue hardship in light of the unforeseen and unavoidable circumstances; (c) application of the rule would not accomplish the purpose for which the rule was intended; and (d) in the case of a change of schools, the change is for reasons unrelated to participation in athletics.

In considering the hardship requests, Mr. Childress contacted Dr. Marilyn Hilliard, the principal of East, who reported that "she felt all three students transferred for athletic reasons." Following his review, Mr. Childress rejected the hardship requests, and upheld the decision that the Students were ineligible to play football at Cordova for the 2018-2019 school year. Under TSSAA's bylaws, Cordova could have appealed Mr. Childress's decision to the TSSAA Board of Control, but chose not to seek review of Mr. Childress's decision.

On September 7, 2018, Appellees filed a petition for temporary restraining order, temporary injunction, and permanent injunction in the Shelby County Chancery Court ("trial court") asking the trial court to prohibit TSSAA from denying the Students permission to play on the Cordova football team by enforcement of the "coaching link" rule. Specifically, Appellees alleged that the "coaching link" rule was unfair and unjust, vague and overbroad, and that TSSAA acted arbitrarily and capriciously when it found the Students ineligible to play football. On September 7, 2018, the trial court signed a fiat enjoining TSSAA from taking any action to bar the Students from playing football at Cordova until it conducted a hearing. On September 10, 2018, TSSAA filed a motion to dismiss on the ground that the trial court did not have jurisdiction to interfere with TSSAA's eligibility determinations. On September 19, 2018, TSSAA filed a response to Appellees' application for temporary injunction. Appellees filed a response to TSSAA's motion to dismiss on September 21, 2018. On October 9, 2018, under Tennessee Rule of Civil Procedure 65.04(7), the parties filed a joint motion to advance and consolidate the trial on the merits with a determination of Appellees' application for preliminary injunction.[1]

---

[1] Tennessee Rule of Civil Procedure 65.04(7) states:

**(7) Consolidation of Hearing With Trial on Merits.** Before or after the commencement of the hearing of an application for a preliminary injunction, the Court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial. This subdivision [65.04(7)] shall be so construed and applied as to save to the parties any rights they may have to trial by a jury.

Tenn. R. Civ. P. 65.04

By order dated December 18, 2018, the trial court denied TSSAA's motion to dismiss, and granted Appellees' petition for permanent injunctive relief finding that: (1) TSSAA's decision to block the Students from competing on the football team would cause irreparable harm to the Students; (2) the harm to the Students was far greater than the harm to TSSAA; (3) because TSSAA's decision to deny the Students' requests for hardship exceptions to the "coaching link" rule was incongruous with TSSAA's express mission to "enhance the educational experience of students" and was inequitable, and because TSSAA's "coaching link" rule was harsh, arbitrary, and unjust, Appellees would likely succeed on the merits of their claim; (4) the decisions of TSSAA were tantamount to state action, giving the trial court subject matter jurisdiction over the matter; and (5) that granting injunctive relief in this matter was in the public interest because nearly every public school in Tennessee is a member of TSSAA. TSSAA appealed.

On April 29, 2019, Appellees filed a motion to dismiss the appeal for lack of subject matter jurisdiction arguing that this action had become moot because the Students played football for Cordova for the 2018-2019 school year, and the football season was over. On May 6, 2019, TSSAA responded to the motion. This Court denied the motion to dismiss the appeal on May 9, 2019. Appellees did not file an appellate brief and did not appear at oral argument.

## II. Issues

TSSAA raises two issues on appeal, but the determinative issue is whether the trial court exceeded its authority by interfering with the internal affairs of TSSAA regarding its eligibility decisions for the three Students involved.

## III. Analysis

TSSAA argues that the Tennessee Supreme Court's decision in *Tennessee Secondary School Athletic Ass'n v. Cox*, 425 S.W.2d 597 (Tenn. 1968) is controlling in this case. The *Cox* case "involve[d] separate suits by two high school transfer students, Newman and Cox, whom TSSAA had determined to be ineligible to participate on their new schools' athletic teams. Both students alleged in their separate complaints that the actions of the association were harsh, arbitrary, unlawful and were causing irreparable harm." *Wingad on Behalf of Wingad v. Tennessee Secondary Sch. Athletic Ass'n*, No. 02A01-9111CH00275, 1992 WL 213380, at *3 (Tenn. Ct. App. Sept. 4, 1992). *See Cox*, 425 S.W.2d at 598-99. TSSAA answered, and "[t]he issue raised by the pleadings was whether the [trial court] had jurisdiction to intervene in the internal affairs of [TSSAA] and enjoin the enforcement of its eligibility rules for the benefit of [Newman and Cox]." *Cox*, 425 S.W.2d at 599. Despite this question, the *Cox* trial court granted temporary injunctions in each case. *Id.* Thereafter, TSSAA petitioned the Tennessee Supreme Court for writs of certiorari and supersedeas seeking to set aside the trial court's grant of temporary injunctions. *Id.* The Tennessee Supreme Court granted the writs and held oral

- 4 -

arguments on the matter. *Id.* On appeal, the students argued, *inter alia*, that the trial court had jurisdiction to intervene in the controversy and to grant them relief. *Id.*

In concluding that the trial court "was without jurisdiction and acted illegally in granting the injunctions based upon the allegations contained in respondents' bills," *id.* at 602, the *Cox* Court explained that "'[i]t is well established that the courts will not interfere with the internal affairs of voluntary associations, except in such cases as fraud, lack of jurisdiction, or the invasion of property rights or interests.'" *Id.* at 601 (quoting 6 AM. JUR. 2d, *Associations and Clubs* § 27 (1963)).[2] The *Cox* Court discussed other cases where courts refused to intervene into the actions of voluntary associations. From these cases, the *Cox* Court derived that courts will not interfere with the bylaws and actions of voluntary associations when: (1) individual property rights are not involved; (2) such bylaws do not infringe on public policy; and (3) the actions taken are not unlawful. *Id.* at 601 (discussing *Robertson v. Walker*, 62 Tenn. 316, 318-19 (Tenn. 1874), *Peoria Comm'n Co. v. Memphis Merch. Exch.*, 3 Tenn. Civil Appeals 339 (1913), and *Morrison v. Roberts*, 82 P.2d 1023, 1025 (Okla. 1938)). The *Cox* Court also cited cases from other jurisdictions, which support the proposition that "courts will not interfere in the internal affairs of a voluntary high school athletic association" because the courts have no jurisdiction to do so. *Id.* (citing *Sult v. Gilbert*, 3 So.2d 729, 731 (Fla. 1941); *Robinson v. Illinois High Sch. Ass'n*, 195 N.E.2d 38, 42-43 (Ill. App. Ct. 1963); *State ex rel. Ohio High Sch. Athletic Ass'n v. J. of the Ct. of Com. Pl.*, 181 N.E.2d 261, 266-67 (Ohio 1962); *Morrison*, 82 P.2d at 1025).

We agree with TSSAA that *Cox* is controlling in this case. Here, the Students attended high schools that chose to be members of TSSAA, a voluntary athletic association; as such, these schools were subject to and bound by TSSAA's bylaws and decisions. For the trial court to have had authority to overturn TSSAA's eligibility decision, Appellees would have had to allege, and the trial court would have had to find, that one of the *Cox* exceptions applied in this case. Instead, as discussed, *supra*, Appellees alleged that the "coaching link" rule was unfair and unjust, vague and overbroad, and that TSSAA acted arbitrarily and capriciously when it found the Students ineligible to play football. Importantly, there is no allegation that TSSAA failed to follow its bylaws, or acted in bad faith in making its eligibility determinations regarding these three Students. *See Cox*, 425 S.W.2d at 601. The trial court also failed to make the necessary findings in its order to support its decision to enjoin the enforcement of

---

[2] We note that section 27 no longer contains this language. *See* 6 AM. JUR. 2d, *Associations and Clubs* § 6 ("Absent a violation of law or public policy, arbitrary or collusive actions, bad faith, a lack of jurisdiction, unreasonableness, fraud, or abuse of civil or property rights having their origin elsewhere, the courts do not interfere with the internal affairs of a voluntary association or an association's interpretation or application of its rules."); 6 AM. JUR. 2d, *Associations and Clubs* § 25 ("Courts generally refrain from interfering in the internal affairs of voluntary associations, unless contrary to law, public policy, reason, or the association's bylaws and rules, or in matters of fraud, abuse of discretion, collusion, and the like, or unless the matter involves important economic interests, property interests, or civil rights.").

TSSAA's eligibility rules. Instead, the trial court found, *inter alia*, that: (1) TSSAA's "decision to deny [the Students'] request for a hardship exception to [the] rule [was] incongruous to [TSSAA's] express mission to 'enhance the educational experience of students;'" (2) "TSSAA's decision to decline [the Students'] hardship application[s] [was] inequitable;" and (3) "TSSAA's assertion that the coaching link rule *overrides* a student's bona fide change of residence [was] harsh, arbitrary, and unjust." (Emphasis in original).

The record does not support these findings by the trial court. The "coaching link" rule is not unfair or unjust as it applies to every student who chooses to participate in athletic competition at a school that has chosen to be a member of TSSAA. The rule is not vague and overbroad because TSSAA's bylaws explicitly explain the "coaching link" rule and the consequences of violating it. Furthermore, TSSAA did not act arbitrarily or capriciously in applying this rule to the Students. Instead, as Mr. Childress stated in his declaration, contained in the record, TSSAA followed its bylaws and procedures and fairly applied the rule to the Students. While the trial court found that TSSAA's "decision to deny [the Students'] request for a hardship exception to [the] rule [was] incongruous to [TSSAA's] express mission to 'enhance the educational experience of students,'" the transfer rule, which contains the "coaching link" rule, actually "serve[s] the objectives of the member schools by discouraging school shopping for athletic purposes and recruiting for athletic purposes."

Here, based on the record, TSSAA's eligibility decisions concerning the three Students: (1) did not involve the Students' individual property rights; (2) did not infringe on public policy; and (3) were not unlawful. *See Cox*, 425 S.W.2d at 601. The Students did not have a "legally recognized right to participate in high school athletics. The right to participate [was] a mere privilege." *Id.* at 602 (citing *Morrison*, 82 P.2d at 1025; *Starkey v. Bd. of Educ. of Davis Cnty. Sch. Dist.*, 381 P.2d 718, 720 (Utah 1963)). And the Students' privilege to participate in football at Cordova for the 2018-2019 school year was subject to eligibility rules that Cordova elected to enter into with other member schools in Tennessee, and have such rules enforced by TSSAA.

As in *Cox*, the Students and the high schools were bound by TSSAA's bylaws and its decisions regarding the Students' eligibilities to play football. The trial court, based upon Appellees' allegations, had no authority to interfere with TSSAA's internal affairs, and enjoin the enforcement of its eligibility decision for the three Students. *See Cox*, 425 S.W.2d at 601.

## IV. Conclusion

For the foregoing reasons, we reverse the trial court's order dated December 18, 2018. We remand the case with instructions to the trial court to dismiss the case and collect the costs and for such further proceedings as may be necessary and are consistent

with this Opinion. Costs of the appeal are assessed against Appellees, Melanie Robertson, on behalf of Cailon McGhee; Cedric Lynn, on behalf of Justin Lynn; and Darlene Shinault, on behalf of Tarique Barnes, for all of which execution may issue if necessary.

 

 

_____
KENNY ARMSTRONG, JUDGE